Haley HEBNER and Darrin Charles Scott, Individually and as Next Friends of R.M.S., a Minor, Petitioners,

v.

Nagakrishna REDDY, M.D., and New Braunfels OB/GYN, P.A., Respondents

NO. 14–0593

Supreme Court of Texas.

Argued October 12, 2015

OPINION DELIVERED: May 27, 2016

Rehearing Denied September 23, 2016

Craig William Carlson, The Carlson Law Firm, P.C., Killeen, TX, Eugene W. Brees II, Michelle Mei-Hsue Cheng, William O. Whitehurst Jr., Cheng Alsaffar & Higginbotham PLLC, Austin, TX, for Petitioners.

Diana L. Faust, Kyle M. Burke, R. Brent Cooper, Cooper & Scully, P.C., Dallas, TX, Rosemary L. Hollan, Hollan Law Firm, P.C, San Antonio TX, for Respondents.

JUSTICE BROWN delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE GUZMAN, JUSTICE LEHRMANN, and JUSTICE DEVINE joined.

The Texas Medical Liability Act (Act) requires claimants pursuing a healthcare-liability claim to serve an expert report on each party no later than the 120th day after filing an original petition. About six months before actually filing suit, the plaintiffs in this case voluntarily served an expert report concurrently with a pre-suit notice letter. After filing suit, the plaintiffs attempted to serve the same previously served expert report on the defendant but mistakenly served another report–one from the same expert but addressing an entirely different patient, doctor, and claim. The defendant made no objection, choosing instead to wait out passage of the 120–day deadline before moving to dismiss the plaintiffs' claims for failure to serve an expert report. The trial court denied that motion but the court of appeals reversed, holding that the plaintiffs failed to timely serve a qualifying expert report because pre-suit service of the correct report did not satisfy the Act's requirements and the later incorrect report fell below the Act's

minimal standard as required to maintain a suit.

We disagree. Nothing in the Act compels the conclusion that a plaintiff cannot satisfy the expert-report requirement through pre-suit service of an otherwise satisfactory expert report. Moreover, the court of appeals' conclusion frustrates the Act's purpose, which is to eliminate frivolous healthcare-liability claims, not potentially meritorious ones. Therefore, the plaintiffs' mistaken post-suit service of the incorrect expert report is of no consequence—the plaintiffs met their burden with pre-suit service of the correct report. Accordingly, we reverse the court of appeals.

## I

### A

On February 11, 2010, a baby girl, R.M.S., was born to Haley Hebner and Darrin Scott (collectively Hebner) by emergency caesarean section. Tragically, R.M.S. died the next day. On August 12, 2011, Hebner sent the delivering physician, Nagakrishna Reddy, M.D., a pre-suit notice letter via certified mail, as the Act requires. See TEX. CIV. PRAC. & REM. CODE

§ 74.051(a). Though not required by the Act until 120 days after filing an original petition, see id. § 74.351(a), Hebner included with the pre-suit notice letter the expert report and curriculum vitae of expert Barry Schifrin, M.D. (the First Report). The First Report addressed Reddy, her treatment of Hebner and R.M.S., and Hebner's healthcare-liability claims. Reddy acknowledges she received the First Report and does not dispute the First Report's compliance with the Act's substantive requirements.

On February 22, 2012, about six months after sending the pre-suit notice letter and First Report, Hebner sued Reddy [1] alleging that her negligent treatment proximately caused R.M.S.'s death. Hebner mistakenly included with the original petition an expert report Dr. Schifrin prepared for a different case involving a separate patient and doctor (the Second Report). It is undisputed that the Second Report does not implicate Reddy, Hebner, or R.M.S. Reddy did not object to the sufficiency of either the First Report or the Second Report.[2] Instead, Reddy waited for the expiration of the 120–day deadline for serving an expert report following filing of an original petition.[3] On

---

1. Hebner also sued the medical association to which Reddy belongs—New Braunfels Ob/Gyn, P.A.—because the alleged healthcare liability of Reddy's medical association is "purely vicarious, a report that adequately implicates the actions of [the association's] agents or employees is sufficient." Gardner v. U.S. Imaging, Inc., 274 S.W.3d 669, 671–72 (Tex. 2008). Accordingly, we refer to the two defendants collectively as "Reddy."

2. See id. § 74.351(a) & (r)(6) (requiring that an expert report "provide[ ] a fair summary of the expert's opinions ... regarding applicable standards of care, the manner in which the care ... failed to meet [those] standards, and the causal relationship between that failure and the injury, harm, or damages claimed."); see also Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 879 (Tex.

2001) (explaining that a report is insufficient if it "merely states the expert's conclusions about the standard of care, breach and causation" or "omits any of the statutory requirements."); Scoresby v. Santillan, 346 S.W.3d 546, 557 (Tex.2011) (holding that a report is deficient but curable if it "contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated.").

3. See TEX. CIV. PRAC. & REM. CODE § 74.351(b) (requiring dismissal of the plaintiff's claim with prejudice and awarding the defendant attorney's fees if the plaintiff fails to serve the defendant with an expert report by the 120th day following the filing of the plaintiff's original petition).

June 29, 2012, after the 120 days had passed, Reddy filed a motion to dismiss Hebner's claims for failure to timely file an expert report.[4] The trial court denied the motion, and Reddy filed an interlocutory appeal.[5]

The court of appeals reversed, holding pre-suit service of the First Report did not "satisf[y] the relevant statutory requirements" and the Second Report did "not constitute [an] expert report[] as required" by the Act. *Reddy*, 435 S.W.3d at 328, 329. Justice Pemberton dissented. He noted that Hebner had obtained and served a qualifying expert report "well in advance of the 120-day deadline"—a fact that was "of tremendous potential significance under the statutory scheme the Legislature created in the [Act]." *Id.* at 334, 335 (Pemberton, J., dissenting). We granted review.

**B**

■ The Texas Medical Liability Act aims to "identify and eliminate frivolous healthcare[-] liability claims expeditiously, while preserving those of potential merit. To further this goal, the statute sets a

deadline for the claimant to substantiate the underlying healthcare[-]liability claim with expert reports." *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex.2011) (internal citations omitted). Under the version of the Act in effect when the events giving rise to this litigation occurred, a claimant asserting a healthcare-liability claim must serve a qualifying expert report "not later than the 120th day after the date the original petition was filed" on each party or that party's attorney. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a) (as amended in 2005). Once a defendant has been served with an expert report, he must file any objections "not later than the 21st day after the date [the report] was served, failing which all objections are waived."[6] *Id.* On the other hand, if a claimant fails to timely serve a qualifying expert report, the trial court "shall ... dismiss[] the claim ... with prejudice to the refiling of the claim." *Id.* § 74.351(b).[7]

The parties agree that the Act requires mandatory dismissal when a claimant fails to timely serve a qualifying expert report. They disagree, however, on whether serving an eventual named party with a quali-

---

4. *See id.*

5. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9), (10) (allowing interlocutory appeals when a trial court denies a motion to dismiss for failure to serve an expert report or grants a motion challenging the adequacy of an expert report); *see also Lewis v. Funderburk*, 253 S.W.3d 204, 207–08 (Tex.2008) (explaining a motion to dismiss based on a timely but deficient report can be reviewed by interlocutory appeal).

6. Section 74.351 was amended on September 1, 2013, and now requires that a claimant "not later than the 120th day after the date *each defendant's original answer is filed, serve on that party or the party's attorney* one or more expert reports." TEX. CIV. PRAC. & REM. CODE § 74.351 (current) (emphasis added).

7. *See also id.* § 74.351(c) (allowing one 30-day extension to cure a report that has "not

been served ... because elements of the report are found deficient"); *id.* § 74.351(r)(6) (defining "expert report" as "a written report by an expert that provides a fair summary of the expert's opinions ... regarding applicable standards of care, the manner in which the care rendered ... failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed."); *Scoresby*, 346 S.W.3d at 556 (explaining that service of a piece of paper that says "expert report" is akin to serving no report at all, subjecting the underlying healthcare-liability claim to dismissal; but a statutorily noncompliant report is merely deficient and subject to cure if it is: (1) timely served; (2) contains an expert's opinion that the claim has merit; and (3) implicates the defendant's conduct.).

fying expert report before filing suit, but after providing notice under section 74.051, meets section 74.351's expert-report deadline. Reddy argues that the plain language of section 74.351 and this Court's precedent dictate that an expert report can be served only on a "party"—one who has been named in a lawsuit. Accordingly, the period in which an expert report can be served does not begin until suit has been filed and any report served before then cannot satisfy section 74.351. In this case, the only report served on Reddy after she was sued—the Second Report— was for a completely different patient, doctor, and claim. So, Reddy argues, the trial court abused its discretion when it refused to grant Reddy's motion to dismiss.

Hebner urges that courts should not entertain an interpretation of section 74.351 that vitiates the Legislature's intent to weed out frivolous claims while preserving potentially meritorious ones. Hebner argues her post-suit service of the Second Report should be viewed as an "obvious attempt" to provide Reddy with the correct report a second time. Further, without dispute Hebner actually served Reddy with a qualifying expert report—the First Report—"not later than" the 120th day after the petition was filed. Allowing pre-suit service to satisfy the requirements of section 74.351 furthers the Legislature's intent by preserving a potentially meritorious claim. And it further recognizes the potential constitutional implications of dismissing Hebner's case without giving her an opportunity to have a hearing on the merits.

## II

### A

 Whether an expert report served concurrently with a pre-suit notice letter is timely under section 74.351(a) is a matter of statutory construction, a legal question we review de novo. *See Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex.2012). The primary goal when interpreting a statute is to effectuate "the Legislature's intent as expressed by the plain and common meaning of the statute's words." *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex.2007). "Where statutory text is clear, that text is determinative of legislative intent unless the plain meaning of the statute's words would produce an absurd result." *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex.2012). However, when, as here, "the language is susceptible of two constructions, one of which will carry out and the other defeat [its] manifest object, [the statute] should receive the former construction." *Citizens Bank of Bryan v. First State Bank*, 580 S.W.2d 344, 348 (Tex.1979) (cited in ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 63 (2012)).

 In attempting to quickly jettison meritless lawsuits and save parties the expense of protracted litigation, the Act's expert-report requirement serves two purposes: (1) it "inform[s] the defendant of the specific conduct the plaintiff has called into question[;]" and (2) it "provide[s] a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 879. As we have said, "knowing what specific conduct the plaintiff's experts have called into question is critical" to the defendant's and the court's ability to evaluate the viability of a claim. *Id.* at 876–77. Thus, "eliciting an expert's opinions early in the litigation [is] an obvious place to start in attempting to reduce frivolous lawsuits." *Id.* at 877. In line with this objective, the Act also requires anyone asserting a claim under the Act to provide written notice by certified mail to "each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit." TEX. CIV.

Prac. & Rem. Code § 74.051(a); *see also Williams*, 371 S.W.3d at 189. The purpose of the pre-suit notice letter is "to encourage the parties to negotiate and settle disputes *prior* to suit." *Williams*, 371 S.W.3d at 189 (emphasis added). Pre-suit service of an expert report, though not required, can only further the statute's objective of encouraging and enabling parties to settle healthcare-liability claims without resorting to the lengthy and expensive litigation process.

The issue in this case is not altogether different from that in *Zanchi v. Lane*, in which a defendant argued it had received an expert report too early to satisfy the Act. *See generally* 408 S.W.3d 373 (Tex. 2013). The plaintiff in that case served the defendant, Zanchi, with an expert report after suit had been filed but before Zanchi had been served with process. *Id.* at 376. Zanchi argued he was not a "party" for purposes of the expert-report requirement until he was "served with process, waive[d] service, or otherwise appear[ed] in a lawsuit." *Id.* at 377. Consequently, Zanchi claimed that "transmittal of [the expert's] report to him before the date on which he was served could not satisfy section 74.351(a)." *Id.* at 376. We held that "in the context of the [Act], the term 'party' means one named in a lawsuit," without regard to whether they had yet been served or appeared in the lawsuit, noting that this definition best served the Act's purpose of "eliminat[ing] frivolous [healthcare-liability claims] expeditiously" and "preserving those of potential merit" by giving defendants "advance notice of the pending lawsuit and the alleged conduct at issue." *Id.* at 377–79 (internal alterations omitted). Thus, because Zanchi had been named in a lawsuit before being served with the expert report, he was a "party" for purposes of the Act when he received the report.

■ Relying on this Court's interpretation of the term "party" in *Zanchi*, Reddy argues section 74.351(a)'s 120-day deadline for serving an expert report does not begin to run until a lawsuit is filed. But by asserting that only a "party" named in a lawsuit can be properly served with an expert report under section 74.351(a), Reddy reads our *Zanchi* holding too narrowly.

■ In *Zanchi* we recognized that a "party" under the Act means one named in a suit. *Id.* at 375. Therefore, Zanchi was a party for purposes of the Act even if he had not yet been served with process. *Id.* at 377. But we did not mandate that physicians or health-care providers on the receiving end of a healthcare-liability claim *must* be a "party" to a lawsuit *before* they could be properly served with an expert report. Nor does the statute's plain language impose any such requirement. The statute requires a claimant to serve an expert report on a "party" not later than 120 days after filing the original petition. It does not prohibit the plaintiff from serving a report on a party before filing the petition, and we will not write such a requirement into the statute's language. No one disputes Hebner served Reddy with a qualifying expert report on the same day Reddy received notice of Hebner's impending lawsuit. Reddy seeks dismissal of Hebner's claims simply because a second expert report—essentially a courtesy copy—served with Hebner's original petition was meant for another case.

As in *Zanchi*, "the statute does not appear to contemplate the exact factual scenario presented here." *See* 408 S.W.3d at 379, 380. But the statute does not say that the party must be a party at the time the report is served, and none of the statute's other provisions expressly or implicitly prohibit service before the defendant is named as a party to the suit. Accordingly, we determine that the best course is to

adopt a construction that "does the least damage to the statutory language, and best comports with the statute's purpose." *See id.* at 379–80. Dismissal would dispose of a potentially meritorious claim and punish Hebner for demonstrating her claims had merit from the moment she asserted them—a result the Legislature did not intend and our state constitution potentially does not allow. *See Scoresby,* 346 S.W.3d at 554. We conclude that Reddy was properly served with Hebner's correct expert report on August 12, 2011, the same day Reddy received Hebner's Chapter 74 notice letter and well before the expiration of section 74.351(a)'s 120–day deadline. Accordingly, the trial court did not abuse its discretion in refusing to grant Reddy's motion to dismiss.

Our interpretation of section 74.351 "does not prejudice the defendant; rather, it gives the defendant advance notice of the pending lawsuit and the alleged conduct at issue." *See Zanchi,* 408 S.W.3d at 378. And it properly protects a plaintiff's ability to vindicate her rights, considering that "there are constitutional limitations upon the power of courts to dismiss an action without affording a party the opportunity for a hearing on the merits of [her] cause, and those limitations constrain the Legislature no less in requiring dismissal." *See Scoresby,* 346 S.W.3d at 554 (footnote and internal alterations omitted). Allowing pre-suit service complies with the plain language of section 74.351(a) and furthers the Legislature's purpose of identifying and disposing of frivolous claims.[8]

## B

■ As in *Zanchi,* we turn next to the implications of our interpretation on a defendant's duty to object to an insufficient report. *See Zanchi,* 408 S.W.3d at 379. Section 74.351(a) provides that a defendant "whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served." Tex. Civ. Prac. & Rem. Code § 74.351(a) (as amended in 2005). We unanimously [9] held in *Zanchi* that when a defendant is served with an expert report before being served with process, the "twenty-one-day period for objecting to [a] report [does] not begin to run until he [is] served with process." 408 S.W.3d at 380. We now adapt that rule to these circumstances: the 21–day objection period will not begin to run for a defendant upon whom an expert report was served before suit was filed until the defendant has actually been sued and served with process. The statute's current version notably requires "[e]ach defendant physician or health care provider whose conduct is implicated in a report" to "file and serve any objection to the sufficiency of the report not later than the *later of the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed.*" Tex. Civ. Prac. & Rem. Code § 74.351(a) (current) (emphasis added). Thus, future defendants served with expert reports pre-suit will have 21 days following the filing of their answer in which to object.

8. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a) (as amended in 2005) (requiring claimants to file an expert report "not later than the 120th day after the date the original petition was filed."); *Loaisiga v. Cerda,* 379 S.W.3d 248, 258 (Tex.2012) ("The [expert report] requirements are meant to identify frivolous claims and reduce the expense and time to dispose of any that are filed."); *Certified EMS, Inc. v.*

*Potts,* 392 S.W.3d 625, 631 (Tex.2013) ("The Legislature's goal was to deter baseless claims, not to block earnest ones.").

9. Chief Justice Hecht concurred with the opinion, but he did not disagree with the Court's interpretation of the 21–day period for objecting to a report. *See Zanchi,* 408 S.W.3d at 381–83 (Hecht, J., concurring).

Consequently, by choosing to remain silent until the 120–day deadline expired and then arguing Hebner had filed "no report," Reddy has waived any objection to the First Report. Reddy argues she had no obligation to object because the Second Report constituted "no report," as it failed to address Reddy, Hebner, or R.M.S. *See, e.g., Scoresby*, 346 S.W.3d at 549 (explaining that "a document utterly devoid of substantive content will [not] qualify as an expert report."). However, having determined that the First Report—the report that implicated Reddy and her treatment of Hebner and R.M.S.—was properly served on Reddy within the meaning of section 74.351(a), Reddy was required to object to the sufficiency of that report or risk waiver. Reddy could have objected within 21 days of being served with process, at which time she had already had the expert report for more than six months. This gave her "ample opportunity to prepare [her] objections, but [she] failed to raise them." *See Zanchi*, 408 S.W.3d at 380. Instead, Reddy intentionally remained silent until passage of the 120–day deadline in hopes that she could leverage an obvious mistake to achieve outright dismissal of Hebner's claims. That gambit was unsuccessful. The consequence is that Reddy has waived any objection to Hebner's pre-suit expert report.

\* \* \*

Hebner properly served a qualifying expert report on Reddy well before expiration of the statutory deadline and Reddy waived any objections to Hebner's expert report by failing to file them with the trial court within 21 days of being sued and served with process. Accordingly, we reverse the court of appeals' judgment and

remand this case to the trial court for further proceedings consistent with this opinion.

JUSTICE BOYD filed a concurring opinion, in which JUSTICE WILLETT joined.

JUSTICE JOHNSON filed a dissenting opinion.

JUSTICE BOYD, joined by JUSTICE WILLETT, concurring.

The issue in this medical-malpractice case is whether the plaintiffs complied with the Texas Medical Liability Act's expert-report requirements by serving their expert report before they filed the lawsuit. Focusing primarily on the TMLA's presumed purpose, a majority of the Court holds that they did. Focusing primarily on the TMLA's written text, the Dissent would hold that they did not. Although I agree with the Dissent's text-based approach, I conclude that the TMLA's plain language leads to the Court's result. I thus respectfully concur.

The TMLA includes a pre-suit-notice provision and an expert-report provision. TEX. CIV. PRAC. & REM. CODE §§ 74.051(a), .351. The pre-suit-notice provision requires "any person ... asserting a health care liability claim" to "give written notice of such claim ... to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit ... based upon a health care liability claim." *Id.* § 74.051(a). Under the applicable version of the expert-report provision,[1] the "claimant shall, not later than the 120th day after the date the original petition was filed, serve on that party or the party's attorney one or more expert reports ... for each physician or

---

1. As the Court notes, the Legislature amended section 74.351 in 2013, but the prior version applies to this case. *Ante* at 40 & n.6.

health care provider against whom a liability claim is asserted." *Id.* § 74.351(a) (as amended in 2005). If the claimant fails to serve the report "within the period specified ..., the court, on the motion of the affected physician or health care provider," shall dismiss the claim with prejudice. *Id.* § 74.351(b). If the claimant serves a timely but deficient report, the "defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived." *Id.* § 74.351(a).

The Court concludes that the plaintiffs complied with the TMLA requirements when they served their expert report before they filed the lawsuit. *Ante* at 40. In reaching that conclusion, the Court relies primarily on what it believes to be the TMLA's "purpose" and "objective." According to the Court, the pre-suit-notice requirement "encourag[es] and enabl[es] parties to settle [health care liability claims] without resorting to the lengthy and expensive litigation process." *Ante* at 42. And the expert-report requirement "eliminate[s] frivolous [health care liability claims], not potentially meritorious ones." *Ante* at 39. The Court reasons that "[a]llowing" pre-suit service of an expert report "furthers the Legislature's intent by preserving a potentially meritorious claim," *ante* at 41, and furthers "the statute's objective of encouraging and enabling parties to settle [health care liability claims] without resorting to the lengthy and expensive litigation process," *ante* at 42.

I believe a statute's purpose is to require what its language requires. *See Jaster v. Comet II Constr., Inc.,* 438 S.W.3d 556, 570 (Tex.2014) (plurality opinion) ("[A]ll we know of the statute's purpose is that its purpose is to require 'the plaintiff' in 'any action' to file a certificate of merit 'with the complaint.' Other than that, the statute does not express its purpose."). The Court's analysis illustrates the danger that results when courts attempt to interpret a statute by relying on a presumed but unexpressed purpose. The Court asserts that the purpose of the TMLA's expert-report requirement is to eliminate "frivolous" claims but "not potentially meritorious ones," and then construes the statute to allow pre-suit service of expert reports because, otherwise, the statute would eliminate potentially meritorious claims. *Ante* at 39. The statute, however, expressly requires trial courts to dismiss any health care liability claim if the claimant fails to timely serve an expert report, *even if* the claim is meritorious. TEX. CIV. PRAC. & REM. CODE § 74.351(a). Based on the statute's actual written text, its "purpose" is to eliminate both frivolous *and* meritorious claims whenever a plaintiff fails to timely serve an expert report.

If a plaintiff fails to timely file an expert report, we cannot refuse to dismiss the claims because we think they are or may be meritorious. We are constrained by the written language of the statute, not its presumed purpose. Whatever the Legislature's actual purpose or objective may have been, courts must interpret and apply the statute's requirements as written. *In re Tex. Dep't of Family & Protective Servs.,* 210 S.W.3d 609, 614 (Tex.2006) ("It is not the Court's task to choose between competing policies addressed by legislative drafting. We apply the mandates in the statute as written." (citation omitted)). To be faithful to the limits of our judicial role, we must avoid the temptation to construe a statute based on an unexpressed legislative purpose or objective. "[N]o legislation pursues its purposes at all costs," and where, "as here, 'the language of a provision ... is sufficiently clear in its context and not at odds with the legislative history,

... "[there is no occasion] to examine the additional considerations of 'policy' ... that may have influenced the lawmakers in their formulation of the statute."'" *Rodriguez v. United States*, 480 U.S. 522, 525–26, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987) (alteration in the original) (quoting *Aaron v. SEC*, 446 U.S. 680, 695, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980)). To the extent we may believe it worthwhile to divine the Legislature's intent, the "plain meaning of the text is the best expression of legislative intent." *Post* at 50 (JOHNSON, J., dissenting (quoting *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex.2011))). So I agree with the Dissent that we must simply determine whether the text of the TMLA requires dismissal of a health care liability claim when the plaintiffs serve their expert report before they file the lawsuit. I disagree, however, with the Dissent's conclusion that it does.

The applicable version of the TMLA expressly required a claimant to serve an expert report "not later than the 120th day after the date the original petition was filed." TEX. CIV. PRAC. & REM. CODE § 74.351(a). Here, the plaintiffs undisputedly served their expert report before that deadline. The defendants complain that the plaintiffs served the report before they filed their original petition, but the 120–day deadline does not prohibit them from doing so. The statute expressly sets an end date but not a start date. *See id.*

The defendants argue that the statute prohibits pre-suit service of an expert report because it requires a plaintiff to serve the report on a "party or the party's attorney." *See id.* § 74.351(a). Since a defendant is not a "party" until he is named as a defendant in a lawsuit, they contend that the plaintiffs failed to meet the statute's requirements because they failed to serve their expert report on a "party." *See Zanchi v. Lane*, 408 S.W.3d 373, 377 (Tex.

2013) (holding that a person becomes a "party" under the TMLA when the person is named as a defendant in a lawsuit, even if the person has not yet been served with process). The issue here, however, is whether the TMLA requires a plaintiff to wait until the person becomes a "party" before serving the expert report, and we did not address this issue in *Zanchi*. We stated in *Zanchi*: "Beginning the period for serving an expert report on the date of filing suggests that a 'party' on which to serve the report exists on the date of filing." *Id.* at 378. But we did not hold that the period in fact begins on the filing date because that issue was not before us. I thus agree with the Court that neither our holding in *Zanchi* nor the language of the TMLA "expressly or implicitly prohibit service before the defendant is named as a party to the suit." *Ante* at 42. The TMLA only requires that a plaintiff serve the report on a party, and does not specify whether the person must be a party on the date of service, on the date the court hears the motion to dismiss, or on some other date. Here, the defendants were parties when they filed their dismissal motion, so the plaintiffs filed the expert report on a party, as the statute's express language requires.

Finally, the defendants note that the former statute required a defendant to "file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served." TEX. CIV. PRAC. & REM. CODE § 74.351(a). The defendants argue that the statute must require service of the expert report when a defendant is a party, otherwise a defendant cannot file and serve an objection. But we resolved that issue in *Zanchi*, holding that the "twenty-one-day period for objecting to the report [does] not begin to run until [the defendant is] served with process." *Zanchi*, 408 S.W.3d at 380. Although the statute does not provide for the

"tolling" of the twenty-one-day deadline, "even the most ardent textualist would read a statute of limitations in light of the common-law rules of equitable tolling." *Roccaforte v. Jefferson County*, 341 S.W.3d 919, 930 n. 24 (Tex.2011) (WILLET, J., concurring) ("It is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute." (quoting *Young v. United States*, 535 U.S. 43, 49, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002))). I thus agree with the Court that, consistent with *Zanchi* and our well-established equitable-tolling principles, "the 21–day objection period will not begin to run for a defendant upon whom an expert report was served before suit was filed until the defendant has actually been sued and served with process." *Ante* at 43.

**Conclusion**

I agree with the Court's construction of the TMLA, but disagree with the Court's reliance on anything beyond the Act's actual language to support that holding. Because the TMLA's text did not expressly require the plaintiffs to wait to serve the expert report until the defendants were parties, I concur in the Court's judgment.

JUSTICE JOHNSON, dissenting.

As applicable to this case, the Texas Medical Liability Act (Act) provides:

In a health care liability claim, a claimant shall, not later than the 120th day after the date the claim was filed, serve on each *party* or the *party's attorney* one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care

provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each *defendant* physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived.

TEX. CIV. PRAC. & REM. CODE § 74.351(a) (emphasis added).[1]

Our aim in construing the Act, as with any statute, "is to determine and give effect to the Legislature's intent, which is generally reflected in the statute's plain language." *Zanchi v. Lane*, 408 S.W.3d 373, 376 (Tex.2013) (quoting *CHCA Woman's Hosp., L.P. v. Lidji*, 403 S.W.3d 228, 231 (Tex.2013)). We have emphasized that courts must take statutes as they find them, and when construing them, must presume the Legislature included words in them that it intended to include and omitted words it intended to omit. *See, e.g., Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex.2010); *Entergy Gulf States Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex.2009) (noting that we must enforce statutes as written and refrain from rewriting text that lawmakers chose).

In my view, the court of appeals properly applied foundational statutory construction principles and reached the correct conclusion, which is that the Act requires the claims in this case to be dismissed. TEX. CIV. PRAC. & REM. CODE § 74.351(a), (b); *Reddy v. Hebner*, 435 S.W.3d 323, 329 (Tex.App.–Austin 2014). The Court misconstrues the words lawmakers chose. I dissent.

---

1. Unless otherwise noted, all cites to this section will be to the section that was in effect at the time this suit was filed. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 875 (amended 2003) (current version at TEX. CIV. PRAC. & REM. CODE § 74.351(a)).

Before suing Dr. Nagakrishna Reddy and New Braunfels Ob/Gyn P.A. (collectively, Dr. Reddy), and the hospital where Haley Hebner gave birth, Hebner and Darrin Scott sent pre-suit notice letters to Dr. Reddy and the hospital as required by the Act. *See* Tex. Civ. Prac. & Rem. Code § 74.051. Included with the letter to Dr. Reddy was a curriculum vitae of Barry Schifrin, M.D. and a report from him (The First Report) that was critical of Dr. Reddy's treatment of Hebner and her newborn child. But when Hebner and Scott sued Dr. Reddy, they mistakenly served the doctor with a report from Dr. Schifrin that did not reference Hebner, her child, or Dr. Reddy's treatment of them (the Second Report). Rather, the report referenced a different patient and case, and therefore was no report at all as to Dr. Reddy. *See Scoresby v. Santillan*, 346 S.W.3d 546, 549 (Tex.2011) ("[A] document qualifies as an expert report if it contains a statement of opinion by an individual with expertise indicating that the claim asserted by the plaintiff against the defendant has merit.").

When Hebner and Scott filed suit, they were not confused about the Act's expert report requirements. As reflected in their brief, they understood the requirement that reports be served on a "party" meant that reports had to be served on a defendant named in a lawsuit, and the reports had to be served within 120 days after suit was filed:

> In an attempt to fulfill their 120–day expert report requirement, Hebner and Scott attached to their Original Petition expert reports and *curricula vitae* of Barry Schifrin, M.D.... However, unbeknownst to Petitioners or their counsel, the incorrect expert report of Dr. Schifrin—one written for another lawsuit—was inadvertently attached to the Petition.... Because the Reddy parties did not object to the expert reports *served with Plaintiffs' Original Petition*

*within the 21–day statutory period*, Petitioners and their counsel were not aware that the incorrect report of Dr. Schifrin had been attached to the Original Petition.... Once the plaintiff serves an expert report or reports, it is incumbent on the defendants to serve any objections to the sufficiency of those reports within 21 days after the date the reports were served, failing which all objections are waived.

(emphasis added) (record references omitted). After Hebner and Scott did not serve Dr. Reddy with a report referencing Dr. Reddy's treatment of Hebner and her baby within 120 days after suit was filed, the doctor moved for dismissal. Before the hearing on the motion to dismiss, Hebner and Scott again served Dr. Reddy with the First Report.

The Act is not ambiguous on the issue before us. It requires that a claimant "shall, not later than the 120th day after the date the claim was filed, serve on each *party* or the *party's* attorney one or more expert reports." Tex. Civ. Prac. & Rem. Code § 74.351(a) (emphasis added). We recently addressed who is a "party" under this statutory provision and concluded that a "party" is "one named in a lawsuit." *Zanchi*, 408 S.W.3d at 377, 379. Our conclusion was, in part, based on our reading the statute to specify that the statutory period during which an expert report must be filed begins on the date suit is filed. *Id.* at 378. As we explained in a section entitled "The Meaning of 'Party' under the TMLA":

> Recognizing a person named in a filed pleading as a "party" is consistent with dictionary definitions of the term as well as the Texas Rules of Civil Procedure. Black's Law Dictionary defines "party" as "[o]ne by or against whom a lawsuit is brought <a party to the lawsuit>,"

BLACK'S LAW DICTIONARY 1231–32 (9th ed.2009), and Webster's International Unabridged Dictionary defines party as "the plaintiff or defendant in a lawsuit," WEBSTER'S INT'L DICTIONARY UNABRIDGED 1648 (3d ed.2002). Further, the pleading rules in the Texas Rules of Civil Procedure refer to those named in petitions as "parties," supporting a conclusion that service of process is not a prerequisite to that designation. TEX. R. CIV. P. 79 (requiring that a petition list the "parties").

Not only does construing "party" to mean someone named in a lawsuit better comport with the common usage of the term, this construction is particularly persuasive under the TMLA, where "defendant"—a type of party—is statutorily defined as a "physician or health care provider against whom a health care liability claim is asserted," without regard to whether the physician or provider has been served. TEX. CIV. PRAC. & REM. CODE § 74.351(r)(4).... *Beginning the period for serving an expert report on the date of filing suggests that a "party" on which to serve the report exists on the date of filing.*

*Id.* (emphasis added); *see Stroud v. Grubb,* 328 S.W.3d 561, 564–65 (Tex.App.—Houston [1st Dist.] 2010, pet. denied) ("[T]he expert report requirement is not triggered until the claimant files a cause of action naming a particular physician; it is only then that the defendant becomes a 'party' to a suit involving a health care liability claim."). Further, our understanding and interpretation of "party" was consistent with other sections of the Act. *Zanchi,* 408 S.W.3d at 378; *see State v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002) (noting that when determining legislative intent, we do not examine a term or provision in isolation, but we instead read the particular statute as a whole).

Our interpretation of "party" in *Zanchi* was also confirmed by the Legislature's 2013 amendment to section 74.351(a):

> In a health care liability claim, a claimant shall, not later than the 120th day after the date each *defendant's* original answer is filed, serve on *that party or the party's attorney* one or more expert reports, with a curriculim vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted.

TEX. CIV. PRAC. & REM. CODE § 74.351(a) (effective September 1, 2013) (emphasis added). In the amended language, "party" is equated with "defendant," and there is no indication that the relationship between the two words is any different than it was intended to be in the predecessor language that governs the case before us. *See Leland v. Brandal,* 257 S.W.3d 204, 206 (Tex. 2008); *Dick v. Kazen,* 156 Tex. 122, 292 S.W.2d 913, 915–16 (1956).

What we said in *Zanchi* is hard to misconstrue. Indeed, in their brief, Hebner and Scott demonstrate how straightforward our opinion was and how clear section 74.351(a) is on the question:

> Petitioners are not suggesting that this Court overrule *Zanchi v. Lane,* 408 S.W.3d 373 (Tex.2013) and create a *new* rule that pre-suit service of an expert report would alone serve to satisfy the report requirements of Chapter 74 and give rise to an obligation to object to such a report. Rather, Petitioners believe that under the unusual circumstances specific to this case, Petitioners sufficiently fulfilled the report requirement of Chapter 74 by serving a statutorily compliant report on Respondents, *then attempting to comply with the letter of Chapter 74* by serving the same report on Respondents again.

(emphasis added).

Dr. Reddy was not a "party" to anything when Hebner and Scott sent the First

Report with their pre-suit notice letter. They knew that they had not sued the doctor as of the time they served her with the report and understood the 120–day statutory period for serving the required report would begin the date they sued. Thus, their attempt "to comply with the letter of Chapter 74" was too late.

The pre-suit notice requirement does not reference an expert report, require one to be served with the notice, or imply that serving a report before suit is filed fulfills any purpose under the Act. *See* TEX. CIV. PRAC. & REM. CODE § 74.051(a) (requiring persons asserting health care liability claims only to give written notice before filing suit "to each physician or health care provider against whom such a claim is being made"). Hebner and Scott do not argue otherwise. What they essentially argue is that under their particular circumstances, the statutory language should be disregarded. They begin by positing that the Court "must not pay blind allegiance" to the rule that we are to be guided by the words used by the Legislature "if the result of the plain meaning of the language yields absurd results." So far, so good. That argument restates what we have said many times. *See, e.g., Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex.2011) ("The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results.").

But while dismissal of a claim for failure to comply with requirements prescribed by the Legislature under these circumstances may be a harsh result, it is not an absurd or nonsensical one. We have recognized that aspect of the Act's expert report deadline. *E.g., Ogletree v. Matthews*, 262 S.W.3d 316, 319–20 (Tex.2007) (stating that the Legislature "created a statute-of-limitations-type deadline within which expert reports must be served.... This strict 120–day deadline can lead to seemingly harsh results"). In agreeing with Hebner and Scott, the Court does not conclude that interpreting the Act according to its plain language leads to an absurd or nonsensical result. Rather, the Court effectively concludes that its choice of how to handle this factual situation is better than the Legislature's choice. The Court says that pre-suit service of an expert report "furthers the Legislature's intent by preserving a potentially meritorious claim." *Ante* at 45. However, the Court's statement flies in the face of our innumerable recitations of one of the cardinal principles of statutory construction: the plain meaning of the text is the best expression of legislative intent. *E.g., Molinet*, 356 S.W.3d at 411.

In considering the requirement that an expert report be served on each "party or the party's attorney," TEX. CIV. PRAC. & REM. CODE § 74.351(a), we must–or at least should–presume that the Legislature chose the word "party" with purpose. *See Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 438–39, 2016 WL 1267697 (Tex.2016) ("[T]his Court presumes the Legislature deliberately and purposefully selects words and phrases it enacts, as well as deliberately and purposefully omits words and phrases it does not enact.") (quoting *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex.2012)). The reason for such a presumption is reflected by the Act, in which the Legislature differentiated between health care providers according to their status at various points in the process of a health care liability claim. As one example, the Act provides that a person asserting a claim shall give written notice before filing suit "to each physician or health care provider against whom such a claim is being made." TEX. CIV. PRAC. & REM. CODE § 74.051(a). This language noticeably does not refer to a "party" or

"defendant." But when the effect of the notice is set out, the statute provides for tolling of the applicable statute of limitations as to "all parties and potential parties." *Id.* § 74.051(c). Then the Act requires dismissal of a claim if an expert report has not been served on "a *defendant* physician or health care provider." *Id.* § 74.351(b) (emphasis added). And it specifies that a plaintiff must serve answers to interrogatories "on the *defendant's* attorney or ... the *defendant*." *Id.* § 74.352 (emphasis added). And it is the Court's function to honor the Legislature's intent as expressed in its words, not to look for ways to interpret those words to reach a result that might seem to be better to the Court than the result that would follow from applying the statute's words.

The Court does not point to any of the Act's language for support of its conclusion that the time for serving an expert report begins before the defendant has been sued on the claim. And for good reason; the Act's language does not say what the Court construes it to say. There is no reference in the Act to "eventually named" or "potential" parties regarding serving an expert report. The Legislature could have used those words or phrases, but it did not. Holding that Hebner and Scott's service of the First Report outside the Act's 120–day period satisfied the Act's requirements does not reflect legislative intent as expressed in the words of the statute.

Hebner and Scott vaguely suggest there may be some constitutional infirmity with the Act's expert report requirement as does the Court and as did the dissenting justice in the court of appeals. 435 S.W.3d at 336 (Pemberton, J., dissenting). But Hebner and Scott never bothered to actually make that challenge. Which is understandable. After all, Hebner and Scott knew they had to have a report and timely serve it—they had one long before they

sued; they just mistakenly failed to comply with the Act's requirements regarding serving it. To its discredit, the Court does not bother to do more than revisit a similar vague constitutional reference in *Scoresby*, 346 S.W.3d at 554, and reiterates Hebner and Scott's unbriefed suggestion that the expert report provision might have a constitutional infirmity if it is interpreted as it is written. *Ante* at 51.

Hebner and Scott also assert that the concepts of due diligence and relation back should apply to preclude dismissal of their suit. They argue that under the relation-back doctrine, the filing of suit and serving of the Second Report should relate back to the serving of the First Report and the pre-suit notice, and the Second Report was in effect a deficient but curable report. Hebner and Scott argue that Dr. Reddy did not notify them that they served the wrong report with their suit, they were entitled to a 30–day extension to cure the report, and in any event, they cured the error by again serving Dr. Reddy with the First Report before the hearing on the motion to dismiss. But applying either or both of those doctrines would require supplanting or adding to the clear, unambiguous language in the Act. First, Hebner and Scott and the Court seem to fault Dr. Reddy for not pointing out Hebner and Scott's mistake to them. But a party being sued is not obligated to tell the party suing her how to do it. Trying to somehow fault Dr. Reddy for not telling Hebner and Scott how to conduct their lawsuit is a fallacious position.

Hebner and Scott also point to *Stockton v. Offenbach*, 336 S.W.3d 610, 616 (Tex. 2011) to support their arguments, but the Court did not determine in *Stockton* that the due diligence exception applies to serving expert reports under the Act. Rather, we stated "even assuming that a due diligence exception applies to service

completed after Chapter 74's ·expert report deadline, we are not persuaded that the evidence· here is legally sufficient· to raise the issue." *Id.*; *see also Walker v. Gutierrez,* ·111 ·S.W.3d 56, 66 (Tex.2003) (noting that a predecessor statute did not require a defendant to notify a claimant of the claimant's failure to comply with the Act's expert report requirements before moving for dismissal). I would not apply those equitable concepts here in light of the clear statutory language, our prior construction of it, the legislative intent reflected in the clear language, and the clear lack of any duty on Dr. Reddy to object within 21 days after being sued when the report served with the suit was undisputably not an expert report under the Act. In my view, the court of appeals correctly decided these issues. 435 S.W.3d at 330, 331.

Finally, legislative intent as to not excusing a mistake in failing to timely file an expert report is clear from the language of the Act, but it becomes. overwhelmingly manifest when the predecessor statute is examined and compared to the Act applicable to this case. Before 2003, the relevant statutory language specifically allowed trial courts to grant a 30–day extension of time for an expert report to be filed if the failure to timely file was due to accident or mistake:

> Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section [relating to expert reports] and after hearing the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the claimant· to comply with that subsection. A motion by a claimant for relief under this subsection shall be considered timely if it ·is filed before any hearing on a motion [to dismiss] by a defendant under Subsection (e) of this section.

Tex. Rev. Civ. Stat. Ann. art. 4590i § 13.01(g) (repealed 2003). The substance of that provision was not carried forward into the current statute, indicating legislative intent that a mistaken failure to timely serve a report does not justify extending the time for filing such a report. *See Scoresby,* 346 S.W.3d at 554; *Badiga v. Lopez,* 274 S.W.3d 681, 683–85 (Tex.2009).

Whether the Court views the procedural structure enacted by the Legislature as the best, the worst, the most efficient, or the least efficient way to accomplish the Legislature's goal is not the proper test for reading words into or out of legislation. Reading words into or out of statutes raises the risk of crossing the dividing line between judicial and legislative prerogatives. Thus, we tread lightly when doing so, and the longstanding test we apply is whether, absent our reading words into or out of a statute, the statute yields an absurd, nonsensical, or unconstitutional result. *See Presidio Indep. Sch. ·Dist.,* 309 S.W.3d at 930. In this instance, the statute's requiring an expert report to be served during a 120–day window beginning with the filing of suit effects a harsh, but not nonsensical or absurd, result, and it should be interpreted to effect the legislative intent manifested by its words. And as previously noted, Hebner and Scott do not challenge the provision's constitutionality.

The Court's erroneous conclusion about when a report is properly served under the Act requires it to find a way around statutory language that provides "[e]ach defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report *not later than the*

*21st day after the date it was served,* failing which all objections are waived." TEX. CIV. PRAC. & REM. CODE § 74.351(a) (emphasis added). Otherwise, as the Court realizes, pre-suit serving of a report would likely result in many persons who later become "parties" or defendants—but who were neither at the time the report was served—waiving their objections by default because they did not realize that being served with a report triggered their 21–day period for objecting to it. The Court finds its way around the language by the simple device of saying that what the Legislature intended is not what it said: what it really meant, but did not say, is that if a physician or health care provider is served with a report and eventually becomes a defendant, the 21–day period runs from the date the physician or provider becomes a defendant in a lawsuit. And in what Dr. Reddy will surely regard as a remarkable turn of events, she ends up on the wrong end of a waiver determination because she did not take action she was not required to take by the Act, while Hebner and Scott prevail despite not taking action they were required to take by the Act.

The bottom line is that Hebner and Scott failed to comply with the Act's requirements and their suit against Dr. Reddy should be dismissed. I would affirm the judgment of the court of appeals.