Maria G. VILLARREAL,
L.P.C. Appellant

v.

Julia FOWLER, Individually and as
Next Friend of Minors S.C.,
L.C., and E.C., Appellee

NO. 02-16-00474-CV

Court of Appeals of Texas,
Fort Worth.

DELIVERED: June 29, 2017

ATTORNEY FOR APPELLANT: ELIZABETH M. FRALEY, HEATHER A. KANNY; FRALEY & FRALEY, LLP, DALLAS, TEXAS.

ATTORNEY FOR APPELLEE: WARREN V. NORRED, C. CHAD LAMPE; NORRED LAW, PLLC, ARLINGTON, TEXAS.

PANEL: MEIER, SUDDERTH, and PITTMAN, JJ.

## OPINION

BILL MEIER, JUSTICE

Appellant Maria G. Villarreal, L.P.C. raises several issues in this interlocutory appeal of the trial court's order denying her motion to dismiss the health care liability claim of Appellee Julia Fowler, individually and as next friend of minors S.C., L.C., and E.C., but we limit our analysis to only one—her dispositive argument that a "Clinical Review" timely served by Fowler fails to qualify as an expert report as that term is used in section 74.351(a) of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West 2017). Because the Clinical Review does not contain the opinion of an individual with expertise that Fowler's claim has merit, it is no report, and the trial court had no option but to dismiss Fowler's health care liability claim. We will reverse and remand.

According to the few contextual facts contained in Fowler's April 2016 original petition, she hired Villarreal to perform counseling services for her three minor children, S.C., L.C., and E.C, but Villarreal, in violation of the administrative code, instead defamed and emotionally abused the children, causing Appellees "continued financial damage and an ongoing need for additional counseling." In addition to claims for breach of contract, defamation, and violation of the DTPA, Fowler alleged a "health care liability claim," premised upon the following allegations:

- "Plaintiff formed an enforceable contract with Defendant for the benefit of the Parties in which Defendant agreed to perform counseling services for family reunification and in which Plaintiff agreed to pay Defendant for that counseling";
- "The Parties had a special relationship in which Defendant had a duty to protect Plaintiffs from mental anguish";
- "Defendant accepted Plaintiff's payment, though Defendant was not trained or capable of providing the services requested, and did not provide the service";
- "Plaintiffs have been damaged by the complete failure to provide the services for which they paid, both monetary and in a greater need for additional counseling in order to undo damage caused by Defendant's actions"; and
- "While being paid to counsel Plaintiffs, Defendant gave legal advice to a third party deleterious to Plaintiffs' legal and emotional positions, in violation of the special relationship between the parties."

Villarreal filed her original answer on May 13, 2016, and moved to dismiss the health care liability claim on September 19, 2016, arguing that Fowler had failed to serve her with an expert report as mandated by chapter 74. Fowler responded that she complied with section 74.351(a)'s ex-

pert-report requirement by serving Michael Flynn, Villarreal's prior attorney, with a "Clinical Review," authored by Shelbie Michaels, MA, LPC-S, before the lawsuit was filed. Fowler's counsel produced an email that he had sent to Flynn on September 4, 2015, which stated, "Michael, [s]ee attached report. I will be filing suit in about two weeks, unless we can come together on a solution." The trial court denied Villarreal's motion to dismiss. Villarreal then filed a motion for rehearing and amended motion to dismiss, arguing that the Clinical Review was no report and that Fowler had failed to serve a curriculum vitae and an expert report from a physician qualified to render an opinion on proximate cause.[1] The trial court specifically denied each ground.

█ In her third issue, Villarreal argues that the trial court erred by denying her motion to dismiss Fowler's health care liability claim because, although timely served, the Clinical Review is no report at all. According to Villarreal, the Clinical Review "cannot fairly be said to have been contemplated as a Chapter 74 report" because "[n]othing in the document or the email attaching it put [her] on notice that the instrument being sent was intended to comply with the statute"; the Clinical Review "does not reference the standard of care, breach thereof, or proximate cause" but instead merely "makes a clinical recommendation (to file an ethics complaint) and then suggests that the family consult with an attorney." Fowler responds that the Clinical Review "looks like an expert report and obviously so. At the least, it is a good faith effort."

We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Polone v. Shearer*, 287 S.W.3d 229,

232 (Tex. App.—Fort Worth 2009, no pet.). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

█ A plaintiff must serve an expert report for each physician or health care provider against whom a liability claim is asserted. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). An expert report is a written report by an expert that provides a fair summary of the expert's opinions regarding the applicable standard of care, the manner in which the care rendered by the physician or health care provider failed to meet the standard, and the causal relationship between that failure and the injury, harm, or damages claimed. *Id.* § 74.351(r)(6). The information in the report does not have to meet the same requirements as evidence offered in a summary-judgment proceeding or at trial, and the report need not marshal all the plaintiff's proof, but it must include the expert's opinions on each of the elements identified in the statute—standard of care, breach, and causation. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878–79 (Tex. 2001); *Polone*, 287 S.W.3d at 233.

Section 74.351 distinguishes between a report that is timely served but deficient and when no report is served. If a report is timely served but deficient, the trial court may grant an extension to cure the deficiency, and no appeal lies from the extension order. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c), § 51.014(a)(9) (West Supp. 2016); *Ogletree v. Matthews*, 262

---

1. Villarreal understandably asserted no argument challenging the pre-suit service. *See Hebner v. Reddy*, 498 S.W.3d 37, 42–43 (Tex.

2016) (construing section 74.351 to permit service of expert report before lawsuit alleging health care liability claim is filed).

S.W.3d 316, 320–21 (Tex. 2007). But if no report is timely served, the trial court has no option but to dismiss the claim, and an appeal lies from the trial court's failure to do so, even if it grants an extension. Tex. Civ. Prac. & Rem. Code Ann. §§ 74.351(b), 51.014(a)(9); *Badiga v. Lopez*, 274 S.W.3d 681, 685 (Tex. 2009). Although it is quite easy to distinguish between a deficient-report case and a no-report case when a party literally fails to timely serve an expert report, the task is more challenging when a party timely serves a document that the opposing side contends is so deficient as to constitute no report, thus implicating the consequences for a no-report case instead of a deficient-report case. Luckily for us, guidance exists.

In *Scoresby v. Santillan*, the question was "whether a document served on a defendant can be so lacking in substance that it does not qualify as an expert report." 346 S.W.3d 546, 555 (Tex. 2011). Concluding that the line between a deficient report and no report had to be drawn somewhere, and based on the Medical Liability Act's (MLA) text and purposes, the supreme court reasoned that a "document qualifies as an expert report if it contains a statement of opinion by an individual with expertise indicating that the claim asserted by the plaintiff against the defendant has merit." *Id.* at 549.

The Clinical Review fails the MLA's minimal expert-report standard because instead of opining that Fowler's health care liability claim has merit, Michaels, its author, opines that Villarreal violated several ethical rules and merely recommends that Fowler consult with an attorney. *See id.*

Specifically, the analysis portion of the Clinical Review contains nine separate headings, seven of which address purported ethical violations committed by Villarreal:

- Under the heading "Failure to keep accurate records," Michaels identifies problems with Villarreal's records.

- Under the heading "Failure to notify clients of board restrictions," Michaels is critical of Villarreal for not disclosing that she was subject to a one-year, board-probated suspension.

- Under the heading "Failure to notify client of fees and arrangements for payment," Michaels states that before providing services, Villarreal failed to inform Fowler of her fees for copying and accessing records.

- Under the heading "Failure to set and maintain boundaries," Michaels complains that Villarreal had a preexisting relationship with the Father of S.C., L.C., and E.C. and continued to communicate with him after the case was closed.

- Under the heading "Failure to terminate," Michaels opines that Villarreal should have ended the counseling sessions because one of the children was not benefitting from them and because Villarreal lacked rapport and "therapeutic alliance" after the first combined session.

- Under the heading "Failure to release records appropriately," Michaels complains that Villarreal inappropriately charged Fowler for a copy of her records and that Villarreal's notes are missing.

- Under the heading "Failure to follow consumer information guidelines," Michaels is critical of Villarreal for not providing Fowler with the information necessary to file a complaint.

None of these purported ethical violations implicates the specific health care liability claim that Fowler alleged in her original petition, nor do we see how they otherwise

could in the absence of any corresponding injury allegedly suffered by Appellees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13) (West 2017) (defining "[h]ealth care liability claim" to include injury by claimant); *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995) (identifying injury as one element of plaintiff's medical malpractice claim).

The remaining two headings are "Failure to protect. Do NO harm" and "Practicing outside scope of practice." Although magic words are not necessary, and these sections are seemingly more relevant to Fowler's health care liability claim—Michaels criticizes Villarreal for ignoring a child's cues of anxiety, badgering a child, not properly responding to a child's discomfort, and using improper counseling techniques—the sections cite the administrative code and couch Villarreal's alleged misconduct in terms of violating her ethical obligations.

Tellingly, in the Clinical Review's "Summary of Findings" section, Michaels does state that Villarreal committed "legal violations" against Appellees, causing "psychological and emotional damage," but instead of ultimately opining that Villarreal breached any particular standard of care, Michaels later qualifies her statement by concluding that Fowler should *consult* with an attorney about filing a malpractice claim:

> It is my professional recommendation that an ethics complaint be filed against Ms. Villarreal with the Texas Board of Examiners for Professional Counselors to address the ethical violations committed by Ms. Villarreal. Further, the family should consult with an attorney about filing a malpractice lawsuit and collecting civil damages against Ms. Villarreal.

Opining that Fowler should consult with an attorney does not indicate that Fowler's health care liability claim has merit; it indicates that Fowler should discuss the matter with an attorney for the purpose of determining *whether* she may have a health care liability claim that has merit. It follows that insofar as the "Failure to protect. Do NO harm" and "Practicing outside scope of practice" sections could liberally be construed to reflect Michaels's opinions on the standard of care, breach, or both, that construction is possible only by improperly viewing those sections in isolation from the remainder of the Clinical Review. Viewed in proper context, the sections provide only Michaels's suggestion that Villarreal visit with an attorney about the prospect of pursuing a health care liability claim, not an opinion that her health care liability claim actually has merit. *See Scoresby*, 346 S.W.3d at 559 ("The 'report' must actually allege someone committed malpractice.") (Willett, J., concurring).

We also note that Michaels is not a physician, but under the MLA, only physicians can be experts on causation. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(C). While a party may fulfill section 74.351(a)'s expert-report requirement by serving multiple reports, *see id.* § 74.351(i), Fowler served only one document, the Clinical Review. Fowler therefore failed to timely serve a report that contained the opinion of a physician on causation. Although the *Scoresby* majority declined to adopt the dissent's construction of the MLA that a timely-served document is no report when one of the statute's elements is entirely missing, like the causation element is here, the absence of any opinion by an expert on causation, while not dispositive of the issue, certainly militates against Fowler's contention that the Clinical Review meets the MLA's expert-report standard. *See Scoresby*, 346 S.W.3d at 558–64 (Johnson, J., dissenting).

■ Insofar as Fowler argues that Villarreal waived her objections to the Clini-

cal Review by not asserting them within twenty-one days of the date it was served, the consensus in the appellate courts—confirmed by the language of the MLA—is that the twenty-one-day deadline to object is not triggered when a party altogether fails to timely serve an expert report, as is the case here. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (establishing twenty-one-day deadline to object to deficient expert report), (b) (requiring dismissal—but setting no deadline by which to complain—when no report timely served); *Ogletree*, 262 S.W.3d at 321–22 (reasoning that objections to report's sufficiency must have been urged within twenty-one day period); *Poland v. Grigore*, 249 S.W.3d 607, 615–17 & n.7 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (reasoning that deadline to object did not apply when no report was served).

Finally, Fowler contends that at the very least, the Clinical Review represents a good-faith effort to comply with section 74.351(a)'s expert-report requirement, but a report cannot constitute a good-faith effort if it is, in effect, no report at all.

It plainly appears that the Clinical Review was not prepared for the purpose of complying with the MLA's expert-report requirement. Although such a document may nevertheless satisfy the MLA's expert-report standard under other circumstances, the Clinical Review here does not.

The trial court abused its discretion by denying Villarreal's motion to dismiss Fowler's health care liability claim because Fowler failed to timely serve an expert report as contemplated by the MLA. *See Scoresby*, 346 S.W.3d at 549, 557. We sustain Villarreal's third issue and do not reach her other issues. *See* Tex. R. App. P. 47.1. Having sustained Villarreal's third issue, we reverse the trial court's order denying Villarreal's motion to dismiss and remand this cause to the trial court for rendition of judgment dismissing Fowler's health care liability claim and for a determination of reasonable attorney's fees and costs. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b)(1), (2).