

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00103-CV

**IN THE MATTER OF THE ESTATE OF** William D. **STEWART**, Jr.

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2017-PC-0986
Honorable Veronica Vasquez, Judge Presiding

Opinion by: Liza A. Rodriguez, Justice

Sitting: Rebeca C. Martinez, Chief Justice
   Patricia O. Alvarez, Justice
   Liza A. Rodriguez, Justice

Delivered and Filed: May 19, 2021

AFFIRMED

The underlying cause of action arises from a dispute between siblings about the administration of their father's estate, which was worth over five million dollars. After a jury trial, Appellant Wayne Stewart was found to have breached his fiduciary duties in administering his father's estate. The trial court's judgment ordered him to pay his sister's attorney's fees. On appeal, he argues the trial court erred (1) in basing its judgment on his sister's breach of fiduciary duty claim; (2) in awarding his sister all of her attorney's fees and costs; (3) in denying his motion for new trial; and (4) in refusing to grant the relief he requested under section 405.003 of the Texas Estates Code. We affirm.

## BACKGROUND

On February 26, 2017, William D. Stewart, Jr. ("William") passed away, leaving a will. Pursuant to his will, his son Wayne Stewart ("Wayne") was appointed independent executor. The will provided for the residuary estate, which constituted most of the estate, to be divided between Wayne and his siblings Jennifer Stewart ("Jennifer"), William Stewart III ("Trey"), and Steven Stewart ("Steven"). The record reveals that during the administration of the estate, Wayne repeatedly did not disclose facts to Jennifer, which caused her to mistrust the manner in which he was distributing the estate.

At the time of her father's death, Jennifer was living in the family home, having moved back in with her elderly parents in 2015 to care for them. Jennifer's parents paid her approximately $1600 per month to be their caregiver. After Jennifer's mother passed away on April 5, 2015, she stayed in the family home to care for her father who had multiple health problems. Wayne also came to the family home daily to help his father.

After his wife passed away, eighty-nine-year-old William executed his Last Will and Testament on August 20, 2015, appointing his son Wayne as independent executor and granting Wayne the power to (1) sell, lease, or mortgage the whole or any part of his estate, at public or private sale, with or without notice, as he "shall deem best"; (2) hold, manage, and operate any property, business, or enterprise that William may have owned at the time of his death; and (3) borrow money on behalf of the estate. The will also granted Wayne all rights and powers granted to trustees under the Texas Estates Code.

The will made three specific bequests: (1) $50,000 in cash to William's other daughter Nancy Lynn Stewart; (2) all of William's real property interests in Medina County, Texas, to Wayne; and (3) all of William's real property interests in DeWitt County, Texas, to William's son Steven. "[A]ll the rest, residue and remainder of [William's Estate], of every kind and character,

real, personal and mixed, and wherever situated" was bequeathed "in equal shares to" his children Wayne, Trey, Steven, and Jennifer. William's residuary estate was comprised primarily of (1) personal property; (2) land located in Goliad County, Texas ("the Goliad Property"); (3) the family home in Windcrest, Texas ("the family home"); and (4) cash and securities. The Goliad Property consisted of two contiguous tracts—one 272-acre tract and a second 272.3-acre tract. William owned an undivided 3/4 interest in the 272-acre tract, which was appraised at $580,700, and he owned the entire 272.3-acre tract, which was appraised at $801,400. The same day William signed his will, he also executed a Statutory Durable Power of Attorney that appointed Wayne as his attorney-in-fact. The next day, on August 21, 2015, William signed documents designating Wayne as beneficiary of certain Merrill Lynch retirement accounts, which were designed to pass outside of probate.

On February 26, 2017, William passed away. At the time of his death, Jennifer was still living in the family home and caring for William. On March 17, 2017, Wayne, who had been named independent executor in the will, filed an Application for Probate of Will and for Letters Testamentary in probate court. On April 3, 2017, the will was admitted to probate, and Wayne was appointed independent executor. Wayne, however, did not communicate any information about the will to Jennifer. She testified she had to go to the courthouse just to obtain a copy of her father's will.

Jennifer also testified that while she was still living in the family home, Wayne, Steven, and their wives arrived at the home unannounced on multiple occasions and removed valuable items without saying anything to Jennifer. According to Jennifer, on March 27, 2017, before Wayne had been appointed independent executor, he discovered that Jennifer had taken "a small clock that he had wanted." She testified Wayne "came after [her] and [was] screaming and yelling, 'You better return that clock to me.'" Jennifer testified that because she was scared of Wayne, she

called the police. During another incident on April 28, 2017, Jennifer testified that Wayne and other family members arrived at the family home where she was living and began removing items:

> And they were mad at me, and they were blocking me, keeping me from going down the hallway. And I was trying to get away from them and trying to get by, and they were blocking me to prevent me from going to my bedroom, the bedroom I was using. And I was trying to get to my bedroom to call—to get to my phone to call the police, and they were keeping me from it, getting to that bedroom. And my brother had threatened: "If you call the police, you are going to jail."

The 911 phone call was admitted in evidence. During the call, Wayne can be heard yelling in the background. When asked why she had been scared, Jennifer testified:

> That particular day, they didn't approve of me taking a couple [of] items, and they were getting mad and kept me from—got furious. And the two brothers kept me from going down the hallway to my bedroom, and I was trying to get away from them. And they were preventing me, and he came through the door, busted through the door, and was threatening me, bullying me.

Jennifer was asked what was left after they had removed all the items they wanted:

> There was left over outdated furniture, nominal items, a bunch of trash, [and] dirt that I had to clean up. Mostly I gave away some items, took some items to the Goodwill, trying to clear out the house, but there was nothing of value left.

With regard to the incidents at the family home with Jennifer, Wayne testified that during one of those incidents on March 22, 2017 (before he was appointed independent executor by the court), he did not remove any personal property. However, he admitted he had taken his father's papers because he "was going through all of his [father's] papers, separating what was junk and what wasn't." Wayne also testified there had never been a family meeting to talk about the will and distribution of the estate with Jennifer.

Jennifer testified she was left in the dark regarding the administration of her father's estate. According to Jennifer, Wayne never showed her any appraisals at all—none for the real property and none for the personal property. The evidence at trial showed that on May 22, 2017, Wayne, as

independent executor, deeded the family home to Jennifer. Jennifer testified that she found out much later that Wayne had deeded the house to her:

> I received a letter from Michael Brenan, Wayne's lawyer, asking if I wanted to receive the [family home], and I wrote him back a letter saying I was interested in that house; however, I would have to agree on the value amount of the house and to keep me updated, please, on the house. And the next thing I know, he sent me a letter next and deeded the house over to me. I didn't even know he was going to do that. He deeded the [family] house over to me, and it didn't have any details. I didn't know if I was given the house or charged for it. So I had called Michael Brenan, and he informed me that my brother, Wayne, was going to charge me $160,000 for that house, and I said I didn't know about it. And he said, "Well, you said you were interested." And I said that I needed to agree on the amount.

Jennifer later clarified during her testimony that she was not "charged" for the house and that Wayne had deducted $160,000 from her share of the residuary estate. During his testimony, Wayne admitted that he never informed Jennifer he was going to deed the family house to her.

Jennifer also testified that sometime in April or May 2017, she received a check in the mail from the estate for $50,000. According to Jennifer, "[i]t just had 'distribution' on the check. That was it." Jennifer testified that because she had not received any information from Wayne about the estate, she wrote him a letter requesting a statement showing an accounting of the estate. She did not receive a statement showing an accounting as requested; instead, Wayne's lawyer sent her a letter, stating that Wayne had received a request for an accounting from her. The letter informed her that "[t]here are different types of an accounting mentioned in the law" and asked her "to send [to the lawyer] the law reference for the type of accounting that [she was] requesting." Jennifer testified that because she is not a lawyer and did not have a legal background, she hired a lawyer.

With regard to William's real property, he owned over 400 acres in Goliad, Texas, which had been in the family for generations. Jennifer's brother Steven testified that the Goliad Property is unimproved land, has a lot of oak trees on it, and has been in the family for over 150 years. Steven also testified the land has "a lot of brush" and can only be used for "a cow-calf operation."

William not only owned the surface estate at the time of his death, he also owned rights to the mineral estate. Steven testified that Goliad County was a nonproducing area and that the appraisal had valued the mineral rights at $200/acre. Wayne testified the property was "invaluable" to him. Jennifer testified likewise.

On May 30, 2017, Steven signed a permit for American Electric Power ("AEP") to enter the Goliad Property so that it could perform some survey work about a possible easement on the Goliad Property. Steven testified at trial that he owned property next to the Goliad Property, and AEP had reached out to him in 2014 and 2015 about possibly needing to put in an electric line in that area. Steven testified that he did not tell Jennifer anything about a possible easement on the Goliad Property.

On July 26, 2017, Jennifer filed a notice of appearance in probate court.

On August 16, 2017, Mark Barnes, an appraiser, inspected the Goliad Property. Steven testified that he hired Barnes on Wayne's behalf. Steven testified he paid Barnes's fee and was then reimbursed by the estate. On August 22, 2017, AEP sent a letter to Steven's address. The letter was addressed to Wayne, Trey, Steven, and Jennifer. In the letter, AEP offered to purchase a transmission line easement at a price of $7,500 per acre. Wayne never disclosed this offer to Jennifer. Steven testified he never sent a copy of the letter to Jennifer. Additionally, Wayne did not provide the AEP offer letter, or other information about the possible easement, to Barnes so that it could be included in Barnes's appraisal.

Between August and December 2017, Wayne and his brothers negotiated with AEP regarding the easement. According to Steven, he did most of the communicating with AEP and was the one who got AEP to increase its offer to $11,250 per acre. Wayne testified he first knew about the possible AEP easement six to eight months before his father passed away.

On September 6, 2017, Barnes issued his appraisal report of the Goliad Property. He valued Tract 1 of the property at $2,950 per acre and Tract 2 at $3,800 per acre. Wayne used Barnes's values to determine Jennifer's equal share of the Goliad Property. Jennifer testified that by October 2017, Wayne still had not communicated with her, and she could not understand why she had not received any more distributions from the estate. She testified that she knew her father had over $2 million in Merrill Lynch assets, other stocks and bonds, and the Goliad Property.

On December 19, 2017, Wayne, as independent executor, deeded the Goliad Property to himself, Trey, and Steven. Days later, he asked AEP to remove Jennifer from the easement document. Jennifer testified Wayne did not tell her about this transfer or send her a copy of the deed. According to Jennifer, at the end of 2017, the only distributions she had received were the family home (which had been valued by Wayne at $160,000) and a $50,000 check.

On January 4, 2018, Wayne, Trey, and Steven executed easements over the Goliad Property to AEP for a purchase price of $11,250 per acre. Wayne testified he did so with the knowledge that he was going to receive $73,000 from AEP and that Jennifer would not receive anything. Wayne did not put the value of the AEP easement in any of the inventories or accountings of the estate. He testified that he did not do so because the AEP easement was not part of the estate. Also on January 4, 2018, Wayne filed an Inventory, Appraisement, and List of Claims in probate court. Jennifer testified her attorney received a copy but the document was very conclusory and did not contain any detailed information.

That same month, Jennifer was contacted by the Goliad Appraisal District and learned that Wayne had deeded the Goliad Property to himself, Trey, and Steven. She also learned "that there was an easement through the property, an easement, and that my brothers had received around $258,000 for that easement." According to Jennifer, while she had received distributions in the amount of $210,000 (the family home and the $50,000 check), she calculated her brothers had

each received over $500,000 from the residuary estate (1/3 of the value of the Goliad Property, as well as 1/3 of the value for the AEP easement, and $50,000 check). Jennifer testified "there was no explanation [and] no information." Jennifer testified, "I desperately wanted to find out when my father's estate was going to be resolved and when I would get my inheritance."

On January 12, 2018, the trial court approved the inventory, appraisement, and list of claims filed by Wayne. On March 6, 2018, Wayne filed a First Amended Inventory, Appraisement, and List of Claims, which the trial court approved on March 14, 2018. On March 22, 2018, Jennifer filed a Motion for Court Appointment of Independent Appraiser, in which she asserted the Goliad Property had been appraised "substantially below market value" and requested that the court appoint an appraiser of her choice to perform an independent appraisal of the Goliad Property. At trial, Jennifer testified that with regard to the AEP easement, she had learned it had been valued at $11,250/acre whereas the part of the Goliad Property distributed to her brothers was being valued at $3,900/acre. Jennifer believed Wayne was undervaluing the Goliad Property at her expense. She testified her attorney filed these motions to determine the true value of the Goliad Property. Also at trial, Steven testified at trial about the value of the amount paid by AEP for the easement:

> Well, the property we are talking about where the easement is is [sic] nothing but solid oak trees, and when they go through there, they completely wipe out all that. So the whole tract will be demolished of all the oak trees, and you will have the high lines that you can't build underneath or close to and no fencing underneath. And so you are struck with this big high line for the rest of the life of the property you own. That's basically it.

On March 27, 2018 Jennifer filed a Motion for Court-Ordered Partial Distribution, requesting that the probate court direct Wayne to distribute $100,000.00 to her within twenty days. Jennifer's motion stated that she was struggling to pay her bills. She requested the probate court to order Wayne to make a partial distribution within twenty days to cover her financial support until final resolution of the disputes between her and Wayne could be resolved. On April 2, 2018,

Jennifer's attorney received a letter from Wayne's attorney. The letter informed Jennifer that if she pursued her motions, she would risk losing her inheritance under the will's no-contest clause. Jennifer testified the letter "was very intimidating [and was] trying to get [her] to go away and not proceed." Jennifer testified that by July 2018, she knew that over $2 million remained in Merrill Lynch stocks and bonds, and other investment accounts owned by her father. She could not understand why Wayne had not made another distribution.

On July 31, 2018, Wayne filed a Response and Objections to Motion for Court-Appointed Appraiser. On August 13, 2018, Jennifer withdrew her motion for court appointment of independent appraiser. In September 2018, Wayne made another distribution of the estate. Jennifer received around $730,000. However, Jennifer testified she had not been made aware of the distribution. Wayne "deposited the stocks in a stock form and [sic] account that [she] had with Merrill Lynch, and [she] wasn't aware of it. [She] didn't know." Jennifer testified, "He did not give me any information." At trial, Wayne confirmed that he had transferred securities from the estate's account into Jennifer's Merrill Lynch account and that he had not told her about the transfer or discussed the matter with her.

On September 18, 2018, Wayne filed an Executor's Section 405.003 Motion for Judicial Discharge, stating that "[a]ll of the assets of the [e]state (subject to the funds retained for the reserve below) have been distributed to the appropriate beneficiary of the estate" and that there was no further need for an independent administration of the estate. Wayne, as independent executor, sought a "judicial declaration of non-liability and discharge of all responsibilities," and requested the probate court approve a reserve of $150,000.00 in the Estate bank account "to pay his fees and expenses in the final closing of the Estate and [in] obtaining a judicial discharge." That same day, Trey and Steven filed waivers of citation.

On September 26, 2018, Jennifer was served with the lawsuit. She testified she was concerned because Wayne's motion for judicial discharge represented that all debts of the estate had been paid, but the motion did not provide any information regarding what the debts were. She also testified that no information was provided in the motion about the distributions or to whom the distributions had been made. Jennifer filed a General Denial and Objection to Judicial Discharge. Her lawyer requested an accounting from Wayne. On November 26, 2018, Wayne provided a "Section 404.011 Accounting." The inventory filed by Wayne indicated a total gross estate of $5,165,299.25. The accounting showed that Jennifer had been distributed $950,875.77; Steven had been distributed $976,705.37; Trey had been distributed $976,674.545; and Wayne had been distributed $974,199.80. This accounting revealed to Jennifer that Wayne had not distributed an even share of the residuary estate to her, despite Wayne having represented months earlier in the motion to discharge that he had distributed all the assets appropriately. Using his own appraisal values, the statement showed Wayne had shorted Jennifer approximately $26,000.00. Wayne testified that until the moment he prepared the accounting, he had not realized Jennifer had not been distributed an equal share of the residuary estate. On the day before Wayne's deposition, he made a distribution to Jennifer in the amount of $25,829.60 to account for the shortfall.

The accounting filed by Wayne also revealed that Wayne had improperly paid himself an executor's fee of $48,145.24. Wayne testified at trial that he returned the executor's fee to the estate because his attorney "suggested it might have been a mistake." Wayne testified he could not remember the date when he paid himself the fee or the date he returned it, other than to say it was probably a day before or after the accounting. Taken together, Jennifer emphasizes in her brief that Wayne has admitted to improperly administering $73,974.84 in a manner that directly benefited himself.

On December 11, 2018, Jennifer filed a First Amended Answer, Counterclaim, and Objection to Judicial Discharge. Jennifer alleged that Wayne breached various fiduciary duties to her, including breach of duty as agent in fact under the August 20, 2015 power of attorney and as independent executor of the estate. As agent in fact, Jennifer alleged that Wayne acted under the power of attorney to add himself to the Merrill Lynch retirement accounts as beneficiary to the exclusion of the other estate beneficiaries. As independent executor, Jennifer alleged that Wayne breached his fiduciary duties by not distributing to her any of the Goliad Property and by undervaluing the Goliad Property. She based this claim on the fact that after the Goliad Property was conveyed to the three brothers, the brothers granted an electric line transmission easement to AEP across approximately 16 acres of the Goliad Property for $11,250.00 per acre. Jennifer argued that Wayne should have valued the Goliad Property based on the price paid for the easement, rather than the per-acre value in the appraisal Wayne relied on. Jennifer argued she was entitled to her proportionate share of the amount AEP paid for the easement. She sought damages, exemplary damages, and attorney's fees. In response, Wayne filed an answer and Motion for Declaratory Relief, Request for Executor's Fee and Amended Section 405.003 Motion for Judicial Discharge.

In September 2019, the trial began before a jury. The jury was asked in Question 1 whether Wayne had complied with his fiduciary duty in connection with the distributions of the residuary estate. The jury answered, "No." Question 2 asked the jury what sum of money, if paid now in cash, would fairly and reasonably compensate Jennifer for the damages, if any, resulting from Wayne's breaches of fiduciary duty related to the distributions of the residuary estate. The jury answered, "$0." Question 3 asked the jury whether Wayne complied with his fiduciary duty in connection with the AEP Easement and Right of Way agreements. The jury answered, "Yes." Question 4 related to damages if the jury had answered Question 3 in the affirmative. Question 5 asked the jury whether Wayne, acting under a power of attorney from William, added himself as

a beneficiary to William's Merrill Lynch Accounts. The jury answered, "No." The jury did not answer Question 6 because it answered Question 5 in the negative. Question 7 asked the jury if it found by clear and convincing evidence that the harm to Jennifer, if any, resulted from malice or fraud. The jury answered "No" to both malice and fraud. Question 8 asked the jury what it found from a preponderance of the evidence was the reasonable and necessary fees and expenses for the services of Wayne's attorneys in connection with prosecuting and defending this case. The jury answered, "$0." Question 9 asked the jury the amount of reasonable and necessary fees and expenses for Jennifer's attorneys in connection with prosecuting and defending this case. The jury answered $150,000.00 for representation in the trial court; $25,000 for representation in the court of appeals; $15,000 for representation at the petition for review stage in the Texas Supreme Court; $15,000 for representation at the merits briefing stage in the supreme court; and $10,000 for representation through oral argument and completion of proceedings in the supreme court. The jury's verdict was unanimous regarding Question 1. The jury was not unanimous with regard to the rest of the answers, but certified that five of them had agreed to each and every answer.

After the jury's verdict, Wayne filed a motion to disregard the jury's findings on attorney's fees. Jennifer filed a response and a motion to enter judgment. On November 22, 2019, the probate court signed its judgment, decreeing that Wayne had breached his fiduciary duties to Jennifer and was not granted a judicial discharge pursuant to section 405.003 of the Texas Estates Code. The judgment taxed all costs incurred in the proceeding against Wayne. It ordered, adjudged, and decreed that any funds reserved from the estate and expended by Wayne were not approved by the court as a proper charge against the estate pursuant to section 405.003(e) and that Wayne was personally liable to return said funds to the estate within thirty days. It further ordered, adjudged and decreed that Jennifer recover $150,000 from Wayne, personally, as reasonable and necessary

attorney's fees and expenses, with post-judgment interest on such amount accruing at the rate of 5% per annum. It conditionally awarded future attorney's fees if the case was appealed.

Wayne then filed a Request for Findings of Fact and Conclusions of Law, along with a Motion to Disregard Jury Findings, Motion to Modify Judgment, and Motion for New Trial on Attorney's Fees. On January 17, 2020, the probate court signed its findings of fact and conclusions of law. Pursuant to Texas Rules of Civil Procedure 296 and 297, the probate court made findings of fact and conclusions of law regarding the portion of the case that was not tried by the jury. The probate court made a legal conclusion that Wayne had a statutory right under section 405.0015 of the Estates Code to make non-pro-rata distributions of the residuary estate. The probate court noted that Wayne had requested court approval to reserve the cash sum of $150,000.00 in the estate's bank account to be used to pay his legal fees and expenses in the final closing of the estate, defending his actions as Executor and obtaining a judicial discharge. The court found that Wayne expended those funds on his attorneys prior to obtaining court approval of the reserve. The probate court noted that Jennifer filed a general denial to Wayne's declaratory action for judicial discharge and also sought to specifically deny his discharge because he breached his fiduciary duties owed to her. Explaining that the jury had found Wayne breached his fiduciary duty to Jennifer but that it had also found damages in the amount of $0, the probate court stated that "[t]he root of the litigation by and between Wayne Stewart and Jennifer Stewart was whether he is entitled to a judicial discharge given the allegations that Wayne as a fiduciary engaged in omissions and/or malfeasance." The probate court stated that "[b]ased on the jury's findings, the issues in controversy, and the evidence presented at trial, the [c]ourt determines that any funds reserved from the Estate and expended by Wayne A. Stewart are not approved as a proper charge against the Estate pursuant to Texas Estates Code § 405.003. Wayne A. Stewart is personally liable to return said funds to the Estate." The probate court also found that "[b]ased on the jury's findings,

the issues in controversy, the evidence presented at trial, and the [c]ourt's prior findings, it is equitable and just to award Jennifer Stewart the full amount of attorney's fees found to be both reasonable and necessary by the jury." Thus, the probate court stated it was exercising its discretion under the Texas Declaratory Judgments Act to award Jennifer "the full amount of her reasonable and necessary attorney's fees from Wayne A. Stewart, individually, as he was a party to this lawsuit in both his individual and representative capacities." The probate court also found that because Jennifer "was the successful party," she is entitled to recover all of her costs from Wayne, individually, pursuant to Texas Rule of Civil Procedure 131. With regard to a judicial discharge, the probate court found that based on the jury's findings, the issues in controversy, the evidence presented at trial, and the court's prior findings, Wayne was not granted a judicial discharge pursuant to section 405.003 of the Texas Estates Code. Wayne appealed.

### JENNIFER STEWART'S BREACH OF FIDUCIARY DUTY CLAIM

Wayne argues that there is no evidence that he breached his fiduciary duties to Jennifer. The elements of a claim for breach of fiduciary duty are the following: (1) the existence of a fiduciary relationship between the plaintiff and defendant; (2) a breach of the fiduciary duties arising from that relationship by the defendant; and (3) injury to the plaintiff, or *benefit* to the defendant, resulting from that breach. *Plotkin v. Joekel*, 304 S.W.3d 455, 479 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). "The relationship between an executor and the estate's beneficiaries is one that gives rise to a fiduciary duty as a matter of law." *Punts v. Wilson*, 137 S.W.3d 889, 891 (Tex. App.—Texarkana 2004, no pet.) (citing *Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996)). "An executor's fiduciary duty to the estate's beneficiaries arises from the executor's status as trustee of the property of the estate." *Id*. (citing *Humane Soc'y v. Austin Nat'l Bank*, 531 S.W.2d 574, 577 (Tex. 1975)). "The executor thus holds the estate in trust for the benefit of those who have acquired a vested right to the decedent's property under the will." *Id*. "The

fiduciary duties owed to the beneficiaries of an estate by an independent executor include a duty of full disclosure of all material facts known to the executor that *might* affect the beneficiaries' rights." *Id*. (citing *Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex. 1984), and *Huie*, 922 S.W.2d at 923) (emphasis added).

"A fiduciary also 'owes its principal a high duty of good faith, fair dealing, honest performance, and strict accountability.'" *Id*. at 892 (quoting *Ludlow v. DeBerry*, 959 S.W.2d 265, 279 (Tex. App.—Houston [14th Dist.] 1997, no writ)); *see also Wolf v. Ramirez*, No. 08-19-00147-CV, 2020 WL 5110635, at *12 (Tex. App.—El Paso Aug. 31, 2020, no pet.) ("Generally, fiduciaries owe the following duties to their principals: the duty of loyalty and utmost good faith; duty of candor; duty to refrain from self-dealing; duty to act with integrity; duty of fair, honest dealing; and the duty of full disclosure."). "When an independent executor takes the oath and qualifies in that capacity, he or she assumes all duties of a fiduciary as a matter of law which, in addition to other duties, includes the duty to avoid commingling of funds." *Punts*, 137 S.W.3d at 892.

### A. Does Section 405.0015 Preclude Jennifer's Breach of Fiduciary Duty Claim as a Matter of Law?

On appeal, Wayne argues there is no evidence to support the finding by the jury that he breached his fiduciary duty to Jennifer, because under section 405.0015 of the Texas Estates Code, he had the right to make non-pro rata distributions of the residuary estate. Thus, he argues that he did not engage in any prohibited self-dealing as a matter of law.

Section 405.0015, titled "Distributions Generally," provides the following:

Unless the will, if any, or a court order provides otherwise, an independent executor may, in distributing property not specifically devised that the independent executor is authorized to sell:

(1) make distributions in divided or undivided interests;

> (2) allocate particular assets in proportionate or disproportionate shares;
>
> (3) value the estate property for the purposes of acting under Subdivision (1) or (2); and
>
> (4) adjust the distribution, division, or termination for resulting differences in valuation.

TEX. EST. CODE § 405.0015. Wayne points out that his father's will did not limit his authority under section 405.0015. The will's only limitation on disposition of the residuary estate was that it be distributed "in equal shares" to Wayne, Trey, Steven, and Jennifer. Thus, Wayne argues section 405.0015 and the will permitted him to distribute the Goliad Property to the three brothers and exclude Jennifer—so long as Jennifer received equal value of the residuary estate as a whole. Wayne argues the undisputed evidence at trial shows that Jennifer received an equal share of the residuary estate based on the independent appraisal value Wayne assigned to the Goliad Property.

Wayne further argues that Jennifer based her breach of fiduciary claims on (1) Wayne's failure to disclose his distribution plan and his decision to deed the Goliad Property to the three brothers; (2) Wayne's failure to disclose the AEP easement to her; and (3) Wayne's failure to value the Goliad Property at $11,250.00 per acre, which is the amount AEP paid for its easement. According to Wayne, under section 405.0015 and the will, he had the authority to determine whether and how to make non-pro rata distributions of the residuary estate, and thus to exclude Jennifer from distribution of the Goliad Property. Wayne argues neither his plan or ultimate distribution of the Goliad Property could have affected Jennifer's rights so long as she received equal value of the residuary estate. Thus, Wayne argues the information Jennifer claims she did not receive was not material, and his failure to disclose that information, constitutes no evidence that he failed to comply with his fiduciary obligations.

In response, Jennifer contends his argument is premised on a "tortured interpretation" of section 405.0015 of the Estate Code, which became effective on September 1, 2017. According to

Jennifer, Wayne's interpretation of section 405.0015 effectively asks this court to determine that the typical fiduciary duties applied to an executor (i.e., good faith, fair dealing, honest performance, and full disclosure of *all* material facts known to them that *might* affect the beneficiaries' rights) do not apply to the procedures set forth in section 405.0015 so long as the beneficiary ultimately receives what the executor, using his or her discretion, thinks is an equal value non-pro-rata distribution of estate property. She argues that under Wayne's interpretation, it is immaterial (i.e., no evidence of wrongdoing) that he failed to disclose the substantial AEP easement sales price to Jennifer because he determined that the lower appraised value was appropriate to determine Jennifer's share of the Goliad Property. Jennifer points out that using the lower appraised value greatly benefited Wayne and his nondisclosure of the AEP easement kept Jennifer in the dark of information that affected her opinion of the fairness of Wayne's actions. Jennifer argues Wayne's proposed interpretation of section 405.0015 is an absurd result defeating the manifest purpose of the statute and must be rejected.

Jennifer further argues that adopting Wayne's interpretation of section 405.0015 encourages independent executors to operate in a cloud of darkness antithetical to the fundamental principles of a fiduciary relationship. It encourages independent executors to shop for the lowest possible appraisal when making non-pro-rata distributions—without telling the beneficiaries— because the executor has the "discretion" to apply the lowest value to other beneficiaries as an "equal" share. It encourages non-disclosure of executor-determined dispositive shares to favor one preferred sibling over another, or the executor's interest over the beneficiaries' interest. Thus, she argues that Wayne's interpretation encourages the type of fiduciary conduct that leads to litigation, which is the opposite of the manifest purpose of section 405.0015, which is to avoid litigation over the distribution of assets.

In interpreting a statute, our primary goal "is to effectuate the Legislature's intent as expressed by the plain and common meaning of the statute's words." *Hebner v. Reddy*, 498 S.W.3d 37, 41 (Tex. 2016) (citations omitted). "Where statutory text is clear, that text is determinative of legislative intent unless the plain meaning of the statute's words would produce an absurd result." *Id*. (citations omitted). Further when "the language is susceptible of two constructions, one of which will carry out and the other defeat [its] manifest object, [the statute] should receive the former construction." *Id*. (quoting *Citizens Bank v. First State Bank*, 580 S.W.2d 344, 348 (Tex. 1979)).

In looking at the plain meaning of section 405.0015, it clearly grants an independent executor, unless otherwise limited, authority to make distributions in divided or undivided interests; to allocate particular assets in proportionate or disproportionate share; to value the estate property; and to adjust the distribution, division or termination for resulting differences in valuation. *See* TEX. EST. CODE § 405.0015. However, section 405.0015 states nothing about divesting an independent executor of the fiduciary duties he owes the beneficiaries of the will. We agree with Jennifer that Wayne's interpretation would lead to an absurd result.

We also agree with Jennifer that it is not a coincidence section 405.0015 became effective simultaneously with the Texas Uniform Partition of Heir's Property Act (the "Heirs Partition Act"). *See* TEX. PROP. CODE § 23A.001 (effective Sept. 1, 2017). The Heirs Partition Act provides a streamlined process by which heirs can either force partition in kind, or alternatively effectuate the buyout, of undivided interests in inherited property. *See* TEX. PROP. CODE §§ 23A.001-.013. We conclude section 405.0015 merely provides an independent executor with the tools necessary to make non-pro-rata distributions and avoid the common partition litigation among heirs anticipated and addressed by the Heirs Partition Act. Thus, the typical fiduciary duties of good

faith, fair dealing, and full disclosure still apply to Wayne's actions notwithstanding section 405.0015.

### B. Was There Legally Sufficient Evidence to Support the Submission of Jennifer's Breach of Contract Claim to the Jury?

Having determined that section 405.0015 did not bar Jennifer's claim for breach of fiduciary duty, we turn to whether there was legally sufficient evidence to support the submission of the claim to the jury. In reviewing a legal sufficiency challenge to the evidence, "we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). A legal sufficiency challenge "will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Id.* at 115 (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Evidence does not exceed a scintilla if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists." *Id.* (quoting *Kroger Tex., Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006)).

As noted previously, an independent executor owes a fiduciary duty to fully disclose all material facts known to him that *might* affect the beneficiaries' rights. *Huie*, 922 S.W.2d at 923. "This duty exists independently of the rules of discovery, applying *even if no litigious dispute exists between the trustee and beneficiaries*." *Id.* (emphasis added). Further, "[t]he existence of strained relations between the parties [does] not lessen the fiduciary's duty of full and complete disclosure." *Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex. 1984). Here, there was evidence

at trial that Wayne repeatedly did not disclose material facts to Jennifer about the administration of the estate. With regard to the Goliad Property, there was evidence that he did not disclose the AEP easement offer to her or to Mark Barnes, the appraiser hired to perform the valuation on the Goliad Property for the estate. The evidence shows Wayne then applied the lower valuation found by Barnes in distributing the estate's assets while, at the same time, intentionally waiting to sell the easement until after he had deeded the property to himself and his brothers, at the exclusion of Jennifer. That is, between August and December 2017, Wayne and his brother Steven negotiated the easement purchase price from the initial offer of $7,500 per acre to $11,250 per acre. On December 19, 2017, after agreeing to the easement price of $11,250 per acre but before executing the easement, Wayne deeded the Goliad Property to himself and his brothers. Wayne testified he took these actions knowing he was going to receive $73,000 from AEP that Jennifer would not. Wayne's failure to timely disclose material facts to Jennifer affected her ability to challenge valuation of the Goliad Property. In addition to the Goliad property, Wayne admittedly did not disclose to Jennifer the nature of the securities distributed to her. Without this information, Jennifer could not establish the fairness or completeness of the distribution to her in lieu of an in-kind share in the Goliad property. We conclude there was evidence that Wayne failed to disclose to Jennifer material facts that might have affected her rights.

Wayne argues, however, that there is no evidence that Jennifer suffered any damages as a result of his breach, pointing to jury's finding that Jennifer was entitled to "$0" in damages as a result of said breach by Wayne. Jennifer responds that she did not have to show that she was entitled to monetary damages as a result of Wayne's breach, but merely needed to show that Wayne *benefited* by his breach. *See Plotkin*, 304 S.W.3d at 479 (explaining that the elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary relationship between the plaintiff and defendant; (2) a breach of the fiduciary duties arising from that relationship by the defendant;

and (3) "injury to the plaintiff, or *benefit* to the defendant, resulting from that breach"); *Ortiz v. Las Blancas Minerals, L.P.*, No. 04-18-00769-CV, 2020 WL 806652, at *3 (Tex. App.—San Antonio Feb. 19, 2020, pet. denied) (mem. op.) (stating that a plaintiff needs to show "injury to the plaintiff, or benefit to the defendant" resulting from the breach of fiduciary duty). Thus, Jennifer merely had to show at trial that Wayne benefited as a result of his breach of fiduciary duty.

There was evidence at trial that Wayne repeatedly did not disclose material facts to Jennifer about the administration of the estate. With regard to the Goliad Property, there was evidence that he did not disclose the AEP easement offer to her or to the person performing the appraisal of the property for the estate. The evidence shows Wayne applied a lower valuation of the Goliad Property while, at the same time, not disclosing the details of the AEP easement. Wayne's repeated non-disclosures to Jennifer about the material facts relevant to her interest in the Goliad Property, as well as his decision to apply a lower valuation to Jennifer's share of the Goliad Property and exclude her from the more lucrative offer made on the AEP easement, resulted in a benefit to himself at the exclusion of Jennifer. That is, Wayne received a larger portion of the remaining residuary estate for himself because he chose to pay Jennifer thousands of dollars an acre less for her share of the Goliad property prior to negotiating a higher price for the easement he agreed to with AEP.

Wayne contends that the jury must have completely disregarded all evidence that he benefited from his failure to disclose to Jennifer material facts that might have affected her rights because (a) it found no breach of fiduciary duty with respect to the AEP easement in its answer to Question 3 and (b) did not find Jennifer was entitled to any damages with respect to its answer in Question 1 that Wayne had breached his fiduciary duty "in connection with the distributions of the residuary estate." We disagree with this conclusion as the jury also found that none of the estate's

funds spent by Wayne on his attorney's fees were either reasonable or necessary. Wayne admitted at trial that he had shorted Jennifer in his distributions of the estate, which he claimed he had not discovered until after he was forced to file a statement of accounting as a result of Jennifer's motion. He also admitted that he had improperly paid himself an executor's fee. Although he reimbursed the estate, there was evidence that it was only because of Jennifer's actions that Wayne's misconduct was discovered. Thus, we hold there was evidence that Wayne benefited as a result of his breach of fiduciary duty.

### JENNIFER STEWART'S ATTORNEY'S FEES

Wayne also argues on appeal that the trial court erred in awarding Jennifer all of her attorney's fees and costs. In its judgment, the trial court found that "[b]ased on the jury's findings, the issues in controversy, the evidence presented at trial, and the court's prior findings, it is equitable and just to award Jennifer Stewart the full amount of attorney's fees found to be both reasonable and necessary by the jury." The trial court further stated that it was exercising its discretion under the Texas Declaratory Judgments Act ("TDJA") to award Jennifer the "full amount of her reasonable and necessary attorney's fees from Wayne A. Stewart, individually, as he was a party to this lawsuit in both his individual and representative capacities."

The TDJA provides that "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE § 37.009. The TDJA entrusts attorney's fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *see also Ridge Oil Co. v. Guinn Investments, Inc.*, 148 S.W.3d 143, 161 (Tex. 2004). Unreasonable fees cannot be awarded, even if the trial court believes them to be just, but the trial court may conclude that it is not equitable or just to award even reasonable and

necessary attorney's fees. *Ridge Oil*, 148 S.W.3d at 161-62. Whether it is equitable and just to award attorney's fees is not susceptible to direct proof but is rather a matter of fairness in light of all the circumstances. *Id*. at 162.

Wayne argues that the trial court's award of attorney's fees to Jennifer "flows primarily from the misguided assumption that Jennifer succeeded in establishing her breach of fiduciary duty claim regarding Wayne's distribution of the residuary estate." According to Wayne, because there is no evidence to support Jennifer's breach of fiduciary duty claim, the trial court erred in awarding her attorney's fees. We, however, have already determined that there was legally sufficient evidence to support Jennifer's claim for breach of fiduciary duty.

Wayne further argues that "even if the evidence supported the jury's refusal to find that [he] complied with his fiduciary duties, that finding alone does not make Jennifer a prevailing party." Wayne admits that an award of fees under the TDJA is not dependent on a finding that the party "substantially prevailed," and the trial court may award just and equitable attorney's fees to a non-prevailing party. *Tex. A & M Univ.-Kingsville v. Lawson*, 127 S.W.3d 866, 874 (Tex. App.—Austin 2004, pet. denied). Nevertheless, Wayne argues that neither Jennifer nor the trial court articulated any circumstance justifying the award of attorney's fees other than their misguided notion that she was the successful party in this litigation. We disagree with Wayne.

There was evidence presented at trial of the following circumstances that support the trial court's finding that it was equitable and just to award Jennifer attorney's fees and costs. Wayne was the party who instigated this lawsuit by filing his "Executor's Section 405.003 Motion for Judicial Discharge" and seeking a "judicial declaration of non-liability and discharge of all responsibilities." In the motion, Wayne represented to Jennifer that "[a]ll of the assets of the Estate (subject to the funds retained for the reserve referred to below) have been distributed to the appropriate beneficiary of the Estate . . . [and] [t]here is no further need for an independent

administration of the Estate." Wayne testified at trial that (1) the motion was filed only a week or two after he made what he considered to be a final distribution of securities out of the Merrill Lynch account to Jennifer; (2) he did not talk to Jennifer about the distribution of the securities and did not explain to her what was going on with the transaction; and (3) he provided Jennifer with no information about what remained in the residuary estate. Thus, Jennifer had no information from which to determine whether Wayne was entitled to a judicial discharge of liability, and when her lawyer had asked for an accounting, she was accused of attempting to contest the will. Through Jennifer's legal actions, it was determined that Wayne had not properly distributed the assets of the estate to the beneficiaries. Wayne admitted that when he was required to file the "Section 404.001 Accounting" in response to Jennifer's request, he realized he had distributed to Jennifer $25,829.60 less than Steven, $25,798.78 less than Trey, and $23,324.04 less than Wayne. Wayne ultimately distributed another $26,000 to Jennifer the day before his deposition. The accounting filed by Wayne also revealed that he had improperly paid himself an "Executor's Fee" of $48,145.24. Wayne returned the $48,145.24 to the estate after the accounting was prepared and provided to Jennifer. Thus, it was only due to Jennifer's efforts that she received an equal distribution of the estate by Wayne's own accounting; further, it was only due to her efforts that Wayne returned $48,000 to the estate for the benefit of the residual beneficiaries. Further, by pursuing her objection to Wayne's judicial discharge to verdict, Jennifer obtained a judgment requiring Wayne to return $150,000 in funds he "reserved" (that is, paid to his attorneys) and was denied the judicial discharge he sought. Thus, we find no abuse of discretion by the trial court in determining it was equitable and just to award Jennifer her reasonable and necessary attorney's fees and costs.

Wayne further argues that "Jennifer's failure to segregate her recoverable attorney's fees from those that are nonrecoverable requires a new trial." Wayne points out that he objected to

Question 9 at trial because Jennifer had failed to segregate her recoverable from unrecoverable fees. *See McCalla v. Ski River Dev. Inc.*, 239 S.W.3d 374, 383 (Tex. App.—Waco 2007, no pet.) (objection to jury question on attorney's fees preserves issue of failure to segregate). He emphasizes that Jennifer's allegation he had breached his fiduciary duty when he added himself as a beneficiary to his father's Merrill Lynch accounts was rejected by the jury. Thus, according to Wayne, as an independent breach of fiduciary duty claim, Jennifer should have segregated the fees spent on prosecuting that claim.

"If any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Tony Gullo Motors I, LP v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). However, segregation is not required "when the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible." *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017). "[I]t is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id*.

Jennifer argues that "[a]t its core, this is a lawsuit initiated by Wayne seeking a judicial discharge of all liability regarding his administration of the Estate." Jennifer agrees with Wayne that under section 405.003(a) of the Texas Estates Code, an independent executor is entitled to judicial discharge if: (1) the Estate has been administered; (2) there is no further need for administration; and (3) there are no liabilities of the Estate that have not been fully and fairly disclosed. TEX. EST. CODE § 405.003(a). In her live pleadings, Jennifer generally denied that Wayne had satisfied those core elements necessary for a judicial discharge, and asserted two counterclaims in opposition of the judicial discharge: (1) Wayne breached his fiduciary duties in administering the residuary estate; and (2) Wayne breached his fiduciary duties to the Decedent

when he, as the Decedent's agent-in-fact, added himself to the Decedent's accounts as beneficiary to the exclusion of the other estate beneficiaries.

Wayne does not complain that Jennifer failed to segregate her fees associated with Wayne's breach of fiduciary duty in administering the residuary estate; rather, his focus on appeal is her claim regarding his actions as agent-in-fact. In his brief, he states:

> In particular, Jennifer asserted that Wayne, acting under a power of attorney, breached his fiduciary duty by adding himself as a beneficiary to the Merrill Lynch accounts . . . That claim had nothing to do with any declaration Wayne sought as part of his motion for judicial discharge as independent executor . . . .

Jennifer argues that Wayne is mistaken. According to Jennifer, her counterclaim regarding Wayne's actions as the Decedent's agent-in-fact asserted he breached his fiduciary duty to Decedent "when Wayne added himself to his father's accounts as beneficiary to the exclusion of the other estate beneficiaries." Jennifer, derivatively on behalf of the estate pursuant to section 751.251 of the Texas Estates Code, asserted that Wayne's actions as agent-in-fact constituted self-dealing transactions and that "[t]he estate is due the funds in these accounts as of Decedent's date of death which are believe[d] to be between $50,000 and $68,000." Jennifer argues this claim is necessarily intertwined with her objection to Wayne's entitlement to judicial discharge. That is, because there are potentially additional assets of the estate requiring further administration, Wayne should not be discharged pursuant to section 405.003. Had Jennifer been successful on her agent-in-fact breach of fiduciary duty claim (which Wayne defended using funds from the estate), additional assets would have entered the estate (like the inappropriate executor's commission that was returned by Wayne) that would require distribution to the residuary beneficiaries. Thus, Jennifer argues she was not required to segregate out her attorney's fees incurred pursuing the agent-in-fact breach of fiduciary duty claim against Wayne on behalf of the Estate. *See Kinsel*, 526

S.W.3d at 427. We agree with Jennifer and hold that her legal services advancing both claims were so intertwined that they did not need to be segregated.

## JENNIFER STEWART'S COSTS

Wayne argues the trial court erred in assessing all costs against him because Jennifer was not the successful party. He challenged the trial court's award of costs in his motion to disregard jury findings, motion to modify judgment, and motion for new trial on attorney's fees. Texas Rule of Civil Procedure 131 provides that "[t]he successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." TEX. R. CIV. P. 131. We review an award of costs under Rule 131 for abuse of discretion. *Midwest Med. Supply Co. v. Wingert*, 317 S.W.3d 531, 539 (Tex. App.—Dallas 2010, no pet.).

To "prevail" or "succeed" in a suit seeking actual damages, there must be a showing that the party was actually harmed, not merely wronged. *See Intercontinental Grp. P'ship v. KB Homes Lone Start L.P.*, 295 S.W.3d 650, 656 (Tex. 2009). Wayne argues that because the jury found that Jennifer sustained no injury in the case, she was not the successful party and thus was not entitled to an award of costs under Rule 131. According to Wayne, because the jury's verdict entitled him to a take-nothing judgment, he was the successful party and should have recovered costs against Jennifer.

In response, Jennifer emphasizes that Wayne's argument ignores the fact that she sought to deny the judicial discharge sought by Wayne and that she was successful in doing so. Jennifer contends that she was objectively the prevailing party in the dispute initiated by Wayne seeking a judicial discharge. We agree with Jennifer. Her efforts after Wayne filed his motion for judicial discharge secured (1) an additional $26,000 for herself to account for the distribution shortfall that Wayne had previously failed to disclose; (2) an additional $48,145.24 for the estate when Wayne returned an inappropriate executor's fee; and (3) the return of approximately $150,000 of the

estate's funds inappropriately "reserved" by Wayne and expended on unreasonable and unnecessary attorney's fees. Therefore, while Jennifer was not successful in recovering monetary damages for her breach of fiduciary duty claims, she was successful in obtaining the recovery of substantial funds for the estate and preventing Wayne from obtaining the judicial discharge at the heart of this case. Accordingly, we hold that the trial court did not abuse its discretion in awarding costs to Jennifer as the prevailing party.

### WAYNE STEWART'S ATTORNEY'S FEES

Wayne argues the trial court erred in denying his motion for new trial because no evidence supported the jury's refusal to award attorney's fees to him. Generally, the denial of a motion for new trial is reviewed for abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006).

Wayne points out that in the trial court he sought attorney's fees on three grounds:

1. Section 37.009 of the TDJA, which permits the court to award costs, and reasonable and necessary attorney's fees as are equitable and just;

2. Section 352.051 of the Texas Estates Code, which entitles the personal representative of the estate to reasonable attorney's fees necessarily incurred in connection with proceedings and management of the estate.

3. Section 405.003(e) of the Texas Estates Code, which entitles the independent executor to pay legal fees from the estate.

Wayne's trial counsel testified in support of his claim for attorney's fees. On cross-examination, Jennifer's counsel asked whether the estate had paid Wayne's legal fees. Wayne's attorney testified that his legal fees had been paid out of the Estate's trust account. Question 8 of the jury charge asked the jury what if found from the preponderance of the evidence were the reasonable and necessary fees and expenses for the services Wayne's attorneys in connection with prosecuting and defending this case. The jury answered "$0."

Wayne argues that the jury's award of no attorney's fees was improper and in support of his argument cites *Midland W. Bldg., LLC v. First Serv. Air Conditioning Contractors, Inc.*, 300 S.W.3d 738, 739 (Tex. 2009), and *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 548 (Tex. 2009). *Midland* and *Smith*, however, are distinguishable as they both involved the jury's failure to award any attorney's fees to the prevailing party entitled to mandatory fees under section 38.001 of the Texas Civil Practice and Remedies Code. *See Midland*, 300 S.W.3d at 739 (suit on sworn account); *Smith*, 296 S.W.3d at 546 (suit regarding breached lease/contract); *see also Smith v. Reid*, No. 04-13-00550-CV, 2015 WL 3895465, at *10 (Tex. App.—San Antonio June 24, 2014, pet. denied) (mem. op.) ("Attorney's fees under Chapter 38 are mandatory, not discretion[ary]."). In this case, however, the award of attorney's fees was not mandatory under a statute, but discretionary under section 37.009 of the TDJA. Thus, the jury could determine that none of Wayne's attorney's fees were either reasonable and necessary.

Section 352.051(2) of the Texas Estates Code allows a personal representative "[o]n proof satisfactory to the court," to claim an award for "reasonable attorney's fees necessarily incurred in connection with the proceedings and management of the estate." TEX. EST. CODE § 352.051(2). In his brief, Wayne emphasizes that Jennifer's trial counsel did not cross-examine his counsel on whether his counsel's attorney's fees were reasonable or necessary. However, Jennifer's attorney did not need to do so as there was other evidence presented at trial about Wayne's bad behavior, omissions, and malfeasance. *See Smith*, 296 S.W.3d at 548 ("But the fee, though supported by uncontradicted testimony, was unreasonable in light of the amount involved and the results obtained, and in the absence of evidence that such fees were warranted due to circumstances unique to this case."). That is, there was evidence presented at trial that Wayne's attorney's fees were not necessary and provided no value to the estate.

Wayne was the party who instigated this litigation by seeking "a judicial discharge as Independent Executor" pursuant to section 405.003 of the Texas Estates Code, along with a declaration that "he is entitled to a judicial declaration of non-liability and discharge of all responsibilities." In essence, Wayne was seeking a judicial shield against allegations of omission and malfeasance. "However, when the personal representative's own omission or malfeasance is at the root of the litigation, the estate will not be required to reimburse the personal representative for his attorney's fees." *In re Bessire*, 399 S.W.3d 642, 650 (Tex. App.—Amarillo 2013, pet. denied); *see also Tindall v. Tex. Dep't of Mental Health & Mental Retardation*, 671 S.W.2d 691, 693 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.) ("It is thus apparent that when the fiduciary's omission or malfeasance is at the root of the litigation, the estate will not be required to reimburse the fiduciary for his or her attorneys' fees."). "Such fees are not necessarily incurred in connection with the management of the estate." *Tindall*, 671 S.W.2d at 693.

During closing argument, Jennifer stated to the jury:

We think it is fundamentally unreasonable and unnecessary for the estate [to]of have spent Jenn[ifer]'s inheritance fighting her to cover up [Wayne's] wrongs. Because of that, we are asking you to answer zero for any of that, all of it.

Jennifer argues that the jury reached the conclusion, which is consistent with Texas law, that none of Wayne's attorney's fees were reasonable or necessary in light of evidence illustrating his numerous omissions and malfeasance. We agree with Jennifer.

There was evidence presented at trial that Wayne's attorney's fees were paid by the estate's funds. At trial, Wayne admitted to having failed to distribute an even share of the residuary estate when he shorted Jennifer approximately $26,000, a fact he discovered only *after* filing the motion for discharge in which he represented he had made equal distributions. Wayne also admitted to having improperly paid himself an executor's fees of $48,000, which, again, he discovered only

*after* filing the motion for discharge. There was also evidence of Wayne's threats against Jennifer and misrepresentations he made to Jennifer about the status of the estate. Wayne also improperly threatened Jennifer's inheritance when she asked for additional information and a partial distribution at a time when Wayne had already distributed to himself and his brothers around $500,000 each in value from the residuary estate but had only distributed to Jennifer $210,000 in value from the residuary estate. Therefore, there was evidence to support a finding that Wayne was not entitled to attorney's fees under either the TDJA or section 352.051 of the Texas Estates Code.

With regard to section 405.003 of the Texas Estates Code, Wayne argues the trial court erred in refusing to grant the relief he requested under section 405.003. Section 405.003 provides the following:

> After an estate has been administered and *if there is no further need for an independent administration of the estate*, the independent executor of the estate may file an action for declaratory judgment under Chapter 37, Civil Practice and Remedies Code, seeking to discharge the independent executor from any liability involving matters relating to the past administration of the estate that have been fully and fairly disclosed.

TEX. EST. CODE § 405.003(a) (emphasis added). Section 405.003 also entitles an independent executor to pay for estate legal fees, expenses, or other costs incurred in relation to a proceeding for judicial discharge, subject to refund if the expenditures are not approved by the court as a proper charge against the estate. *Id*. § 405.003(e). The purpose of section 405.003 is to allow an independent executor to obtain a judicial discharge from fiduciary service and to obtain a shield from any liability involving matters relating to the past administration of the estate that have been fully and fairly disclosed. *In re Estate of Whittington*, 409 S.W.3d 666, 670 (Tex. App.—Eastland 2013, no pet.).

Wayne argues that under section 405.003(a), an independent executor is entitled to judicial discharge if (1) the estate has been administered; (2) there is no further need for administration;

and (3) there are no liabilities of the estate that have not been fully and fairly disclosed. According to Wayne, it is undisputed that he met all these requirements, and thus, once Jennifer's claims were fully litigated, there was no impediment to a judicial discharge in his favor. We disagree with Wayne.

A judicial discharge under section 405.003 is appropriate only if there is no further need for an independent administration of the estate. *See* TEX. EST. CODE § 405.003. Here, however, there is further need for administration as a natural consequence of the jury's verdict on Wayne's attorney's fees and the Final Judgment signed by the trial court. Based on the jury's finding that Wayne had breached his fiduciary duties to Jennifer, a finding for which we have determined there was legally sufficient evidence, the trial court in its final judgment did not grant a judicial discharge pursuant to section 405.003. The trial court then stated that "any funds reserved from the estate and expended by Wayne A. Stewart are not approved by the Court as a proper charge against the estate pursuant to Texas Estate Code § 405.003(e)," and ordered that Wayne was "personally liable to return said funds to the estate." Thus, the repayment of funds back to the estate still needs to occur. Once Wayne returns the funds as ordered by the trial court, further administration of the estate would be necessary to properly distribute the returned funds to the beneficiaries of the will. We therefore find no error by the trial court in denying Wayne's request for discharge pursuant to section 405.003 or by the jury in failing to award Wayne attorney's fees.

## CONCLUSION

We affirm the judgment of the trial court.

Liza A. Rodriguez, Justice