

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00316-CV

---

JONATHAN WHEELER AND BROOKE WHEELER, APPELLANTS

V.

J. M. MARTIN CUSTOM HOMES, INC. AND JUSTIN MARTIN, INDIVIDUALLY AND D/B/A J. M. MARTIN CUSTOM HOMES, APPELLEES

---

On Appeal from the 106th District Court
Garza County, Texas
Trial Court No. 24-04-07885, Honorable Reed A. Filley, Presiding

---

December 11, 2025

## DISSENTING OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Although the majority writes with clarity, it reads the TCPA more broadly than the Legislature now permits, therefore I respectfully dissent.

In May 2019, during the passage of HB 2730, the bill revising the Texas Citizens Participation Act ("TCPA"), the bill's author and sponsor, Senator Hughes, engaged in a colloquy with Senator Watson to explain the bill, including the purpose behind the revisions and the aims of the legislation. In response to Senator Watson's question, "[w]ill

you explain what the bill does[?]," Senator Hughes responded the aim was to restrict and narrow the meaning of "public concern" and that, among other things, **"[s]tatements made in private matters to a limited group of people would not be covered[.]"** S.J. of Tex., 86th Leg., R.S. 2024 (2019).[1] It is clear the Legislature's intent was to narrow the application of the TCPA and curtail its application to purely private matters, such as the dispute here. What more evidence of legislative intent do we need than the author of the bill itself?

Moreover, we are required to show judicial restraint in our interpretation of the Legislature's statutory language. Rather than fulfilling the Legislature's goal of narrowing the scope of TCPA litigation, the majority's opinion re-opens the veritable "Pandora's Box" of claims which may be subject to the Act, even if such claims—as is the case here— were between private parties about a private dispute. Under the majority's literal formulation of the revised statute, section 27.010(b)—an exception to enumerated exemptions to the Act—serves as a pathway through the TCPA. This enlarges the scope and breadth of the TCPA and does not meet the Legislature's intention to limit TCPA litigation, opening up the "can of worms" in new ways.

---

[1] Generally, legislative history may not be used to discern the Legislature's intent when the language of the statute is clear on its face. *Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 136 (Tex. 2018). When it concerns the TCPA, however, as the Texas Supreme Court has acknowledged, the statute is "no model of clarity." *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018). Therefore, in this case, the legislative history is useful as one part of a multi-pronged analysis in understanding the Legislature's intent. *See also* Tex. Gov't Code 311.023(3) ("In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the . . . legislative history[.]").

I find the majority's analysis to be contrary to the Legislature's intent and the plain language of the revised statute, and Martin's business disparagement claim did not invoke the revised TCPA.

## ANALYSIS

### QUESTION OF FIRST IMPRESSION

The majority did not address the Wheelers' argument Martin's claim is subject to dismissal under subsection 27.010(b)(2) *per se* because we previously decided all consumer opinions and business reviews are subject to the TCPA. The Wheelers suggest our decision in *Abercrombie v. Angela Hightower Enters.* established—as a matter of law—the TCPA is applicable to business reviews and complaints and is *stare decisis* to determine the present appeal. No. 07-20-00139-CV, 2021 Tex. App. LEXIS 2920, at *1 (Tex. App.—Amarillo Apr. 19, 2021, no pet.) (mem. op.). This is a misreading and mischaracterization of the case.

In *Abercrombie*, the litigants stipulated the TCPA applied to the Facebook posts at issue, and we instead analyzed whether the plaintiff's evidence established a prima facie case of its defamation claim. *Id.* at *3. We did not reach the question, as the Wheelers mistakenly suggest, regarding the applicability of the TCPA to consumer opinions and business reviews.[2] Rather, the construction of subsection 27.010(b)(2) of the revised TCPA is a question of first impression for our Court. To that end, we must apply statutory

---

[2] Also, the evidence lacked an excerpt from the offending Facebook post, preventing us from determining whether the alleged statements were indeed defamatory in nature. *Id.* at *3–7. Contrary to the Wheelers' assertion, we were wholly prevented from making any analysis whatsoever of whether consumer opinions or business reviews were subject to the TCPA.

3

construction analysis to determine whether the Wheelers' alleged communications fall within the ambit of the revised TCPA.[3]

**CONSTRUCTION OF § 27.010(b)(2)**

The single issue raised by the Wheelers is the denial of their TCPA motion to dismiss. Because Martin did not present any evidence of his claim in either his response or at the hearing on the motion, the only question before us is whether Martin's business disparagement claim is subject to the TCPA. *See Mesquite Servs., LLC v. Standard E&S, LLC*, 610 S.W.3d 548, 554–56 (Tex. App.—Amarillo 2020, pet. denied). The Wheelers raised three bases for the application of the TCPA to Martin's business disparagement claim:

(1) the claim is based on or in response to their exercise of the right of free speech;

(2) the claim is based on or in response to their exercise of the right of association; and

(3) the claim should be dismissed because it is related to the communication of their consumer opinions and business reviews described by subsection 27.010(b)(2).

The majority found Martin's business disparagement claim implicated subsection 27.010(b)(2) of the Act and therefore did not analyze the other bases for the Wheelers' TCPA motion.[4]

---

[3] The 2019 amendment to the TCPA applies to all actions brought after September 1, 2019. Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684.

[4] Although the majority also did not undertake the analysis of whether Martin's claim is based on or in response to the Wheelers' rights of free speech or of association, I would hold the claim does not implicate the rights of free speech or association. The Wheelers' alleged statements consist of private communications to Martin's vendors and subcontractors and therefore are not, as a matter of law, a "matter

4

A legal action is subject to dismissal "if the moving party demonstrates that the legal action is based on or is in response to . . . the act of a party described by [s]ection 27.010(b)."  § 27.005(b)(2).[5]  Thus, the primary question is whether Martin's disparagement claim is "based on or in response to" an "act" of the Wheelers "described by [subs]ection 27.010(b)[(2)]."  I agree with the majority, Martin's claim is "based on or in response to" the Wheelers' alleged statements; where we disagree is whether those statements are "act[s]" described by subsection 27.010(b)(2).

Statutory construction is a question of law.  *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022).  In construing a statute, our objective is to determine and give effect to the Legislature's intent.  *Id.* (internal quotations omitted).  We begin by examining the plain meaning of the statutory language.  *Id.*  If the statute is clear and unambiguous, we must read the language according to its common meaning without resort to rules of construction or extrinsic aids.  *Id.* (internal quotations omitted).  We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted.  *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015).  We read the statute to give effect to every word.  *El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521, 531–32 (Tex. 2020).

---

of public concern."  *See* § 27.001(7)(B); *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 135–37 (Tex. 2019) (finding third-party communications claiming an oil and gas lease terminated were not a "matter of public concern" because they involved private business communications); *cf. ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900–01 (Tex. 2017) (finding refinery's internal safety reports were a "matter of public concern").

[5] Section 27.003(a) states the permissible bases for when a party may move for dismissal under the TCPA, including "[i]f a legal action . . . arises from any act of that party in furtherance of the party's communication or conduct described by [s]ection 27.010(b), that party may file a motion to dismiss the legal action."  *Compare* § 27.003(a).  This language is much broader than the language in section 27.005(b) and the "act[s]" which entitle a movant to file a TCPA motion do not necessarily entitle it to dismissal of the legal action.

5

Subsection 27.010(b)(2) of the TCPA provides:

Notwithstanding [s]ubsections (a)(2), (7), and (12), this chapter applies to:

***

(2) a legal action against a person related to the communication, gathering, receiving, posting, or processing of consumer opinions or commentary, evaluations of consumer complaints, or reviews or ratings of businesses.

§ 27.010(b)(2).

I would hold subsection 27.010(b)(2) does not apply to Martin's claim of business disparagement. I reach this conclusion by examining the language of the statute in the context of:

- the associated words surrounding the statutory provision;

- the whole text of the statute; and

- the legislative intent.

***Context of Surrounding Language***

The majority determines this appeal by lifting the words "communication," "consumer," and "opinions" out of subsection (b)(2) and holding: the Wheelers are consumers, they communicated an opinion, therefore the Wheelers communicated a consumer opinion under the Act. This syllogism, however, ignores the words surrounding "communication" and "consumer opinions," and we are required to read statutory language *in context*. *See* TEX. GOV'T CODE § 311.011(b).

The ordinary meaning of the statutory text is the first dip of the oar as courts embark on interpretation of a statute. *In re Ford Motor Co.,* 442 S.W.3d 265, 271 (Tex.

6

2014).  As part of that inquiry, we must consider words in light of the lexical environment in which we find them.  *Id.*  "Undefined terms in a statute are typically given their ordinary meaning, but if a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning."  *Id.* (quoting *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)).

Looking at the language of subsection 27.010(b)(2), the word "communication" is listed with the following words: "gathering, receiving, posting, or processing[,]" while "consumer opinions" is listed with "[consumer] commentary, evaluations of consumer complaints, or reviews or ratings of businesses."  The canon of associated words, also known as *noscitur a sociis*, requires that, "[w]hen several nouns or verbs or adjectives or adverbs—any words—are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar."  ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 195 (2012).[6]  "The canon especially holds that words grouped in a list should be given related meanings."  *Id.* (internal quotations omitted).

The inclusion of the term "communication" in the list of "gathering, receiving, posting, or processing" limits the meaning of the term to only those communications involved in the "gathering, receiving, posting, or processing of consumer opinions or . . . reviews or ratings of businesses."  "[C]onsumer opinions" must mean the type of opinion which resembles "[consumer] commentary, evaluations of consumer complaints, or

---

[6] The majority critiques my use of Justice Scalia's canons of construction by quoting his opinion in 1988 from *Brogan v. United States* for the idea the canons somehow do not apply.  *Ante* at *10.  I agree, courts may not create their own limitations on legislation.  But they are also equally not free to ignore the context of the whole of a statute and expand the limits of legislation beyond the limits of the written text, which is what the majority does here.

7

reviews or ratings of businesses." When read in the context of the surrounding language, the meaning of "consumer opinions" within the statute is only those opinions which review or rate goods or services, including the ones found on websites, such as Yelp and Amazon, and publications, such as Consumer Reports and Good Housekeeping.

We also cannot ignore the deliberate use of the plural "consumer opinions" rather than the singular "opinion" in the statute. The use of the plural as opposed to the singular by the Legislature further indicates the statutory exception applies only to parties which are gathering multiple consumers' opinions, not merely communicating a single opinion. While "the singular includes the plural" in statutory interpretation, we give primary importance to the context of the words and phrases as they appear. *See* TEX. GOV'T CODE § 311.011(b). *See also John M. O'Quinn, PC v. Wood*, No. 12-08-00011-CV, 2009 Tex. App. LEXIS 10081, at *13–14 (Tex. App.—Tyler June 10, 2009, no pet.) (mem. op.) (analyzing supersedeas bond statutes and determining the use of the singular requires each judgment debtor individually to post bond); *accord Walker, LLP v. Kinsel*, No. 07-13-00130-CV, 2014 Tex. App. LEXIS 2061, at *9 (Tex. App.—Amarillo Feb. 14, 2014, no pet.) (mem. op.); *Greystar Dev. & Constr. LP v. Williams*, No. 05-23-01168-CV, 2024 Tex. App. LEXIS 2495, at *10–15 (Tex. App.—Dallas Apr. 10, 2024, no pet.) (mem. op.).

Interpreting "communication" and "consumer opinions" selectively without context, as proposed by the majority, cannot be correct because it is so broad it would encompass and subsume the rest of the statutory language: "gathering, receiving, posting, or processing"—all acts of communication—and "[consumer] commentary, evaluations of consumer complaints, or reviews or ratings of businesses"—all of which are forms of consumer opinions. SCALIA & GARNER at 174 ("[T]he courts must . . . lean in favor of a

8

construction which will render every word operative, rather than one which may make some idle and nugatory.").  We cannot adopt an interpretation which would render all other terms superfluous surplusage.  *Id.*

The "lexical environment" of subsection 27.010(b)(2) does not support a literal interpretation of "communication" and "consumer opinions."  This interpretation is further unsupported by an examination of the whole text of the statute.

***Context of the Statute***

"[T]he whole-text canon . . . calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." *Bexar Appraisal Dist. v. Johnson*, 691 S.W.3d 844, 856–57 (Tex. 2024) (quoting SCALIA & GARNER at 167).  "A legal instrument typically contains many interrelated parts that make up the whole."  SCALIA & GARNER at 167.  "The entirety of the document thus provides the context for each of its parts."  *Id.*

The meaning of "communication" and "consumer opinions" is further informed by the larger context of the statute.  Section 27.010(b) is prefaced by the language: "Notwithstanding Subsections (a)(2), (7), and (12), this chapter applies to: . . . ." § 27.010(b).  Section 27.010(a) provides for certain exemptions from the TCPA:

(a) This chapter does not apply to:

***

(2) a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer;

9

***

(7) a legal action brought under [the Deceptive Trade Practices Act]; [or]

***

(12) a legal action based on a common law fraud claim[.]

§ 27.010(a)(2), (7), and (12).

The use of the term "[n]otwithstanding" in subsection 27.010(b) provides for *exceptions* only for the specifically enumerated *exemptions* described in part (a). The inclusion of this language indicates the Legislature intended for the subsection (b)(2) exception to apply only to the identified exemptions from subsection (a). The meaning of "the act of a party described by [s]ection 27.010(b)" then is defined in part by the identified exemptions. *See VSMSQ Structural Eng'rs, LLC v. Structural Consultants Assocs.*, 679 S.W.3d 767, 773–78 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (examining application of "artistic work" exception under § 27.010(b)(1) to "commercial speech" exemption under § 27.010(a)(2)). In other words, before the exceptions under section (b) can apply, there must be an applicable exemption under section (a). *Id.* Thus, to determine the acts described by subsection (b)(2), we must necessarily anticipate the nature of the acts which would qualify for the enumerated exemptions before the (b)(2) exception applies.[7]

To be excepted from the "commercial speech" exemption under (a)(2), a person in the "business of selling or leasing of goods and services" must have communicated,

___

[7] Martin did not claim an exemption to the Act, and the Wheelers do not appear to qualify for the exemptions under subsections (a)(2), (7), or (12).

10

gathered, received, posted, or processed "consumer opinions" or "reviews [of] businesses" which became the basis of the underlying suit. § 27.010(a)(2). Exception from the (a)(7) exemption requires a defendant business to have published a consumer opinion or business review which forms the basis of a DTPA action. § 27.010(a)(7). And, finally, for the exception to apply to the exemption under (a)(12), a consumer opinion or business review must form the basis of a common law fraud claim, i.e., the party creating or publishing the opinion or review intended to persuade the plaintiff to buy goods or services.[8] As described above, the (b)(2) exception to the enumerated exemptions only arises in the context of a consumer opinion or business review posted by a *business*. The Wheelers did not make the alleged statements to a business which collects and publishes consumer opinions or business reviews. Therefore, their alleged communications were not acts "described by [s]ection 27.010(b)." § 27.005(b)(2).

At least one of our sister courts has decided the exemptions need not apply before the application of section 27.010(b). *Gulf Coast Pros, LLC v. Sweeney*, No. 09-23-00320-CV, 2024 Tex. App. LEXIS 4290, at *27–29 (Tex. App.—Beaumont June 20, 2024, no pet.) (mem. op.). In *Gulf Coast Pros*, the Beaumont Court of Appeals analyzed a TCPA motion by homeowners in a suit for breach of a non-disparagement agreement brought by their former contractor. *Id.* at *13–20. Although the contractor did not raise any applicable exemption, the *Gulf Coast Pros* Court found the Act applied to the homeowners' social media posts, stating: "We conclude that the TCPA applies here because [the contractor's] lawsuit against the [homeowner's] is 'a legal action . . . related

---

[8] *See Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (identifying elements of common law fraud).

11

to the . . . posting [] of consumer opinions or commentary, . . . or reviews or ratings of businesses.'"  *Id.* at \*29 (quoting TEX. CIV. PRAC. & REM. CODE § 27.010(b)(2)) (alterations original).   I disagree with the analysis of *Gulf Coast Pros* primarily because, like the majority here, that court's analysis considered whether the statements were "related to" the acts under subsection 27.010(b)(2).  It is also worth noting, also like the majority here, *Gulf Coast Pros* did not consider all the statutory construction analysis described above:

| Type of Analysis | *Gulf Coast Pros* | Present Opinion |
|---|---|---|
| Statutory Scheme | ✔ | ✔ |
| Statutory Language | ✖ | ✔ |
| Legislative Intent | ✖ | ✔ |
| Legislative History | ✖ | ✔ |
| Cannons of Construction | ✖ | ✔ |

*Gulf Coast Pros* arrived at the wrong conclusion by failing to examine the language in the statute and determining what is an "act of a party described by [s]ection 27.010(b)." § 27.005(b)(2).  Only examining the statutory scheme, it concluded:

> We construe section 27.010(b)(2) to mean that despite the exemptions outlined in (a)(2), (7), and (12), the TCPA applies to any legal action against a person *when that legal action is **related to** the communication, gathering,*

receiving, posting, or processing of consumer opinions or commentary, evaluations of consumer complaints, or reviews or ratings of businesses in all situations unless another exemption enumerated in section 27.010(a) other than those in subsections (a)(2), (7), and (12) applies.

*Gulf Coast Pros, LLC*, 2024 Tex. App. LEXIS 4290, at *27–28 (emphasis added). Rather than determining whether the non-movant's claim was based on the "act of a party" as described in subsection 27.005(b)(2), *Gulf Coast Pros* incorrectly focuses on whether *the legal action* is *related to* subsection 27.010(b)(2). *Id.* Like the majority, *Gulf Coast Pros's* erroneous determination any act "related to" the acts listed in subsection (b)(2) opens up the application of the TCPA to a broader array of claims, which is contrary to the Legislature's intent to narrow the application of the Act.[9]

The majority adopts the rationale of *Gulf Coast Pros*, determining the "notwithstanding" language prefacing subsection 27.010(b)(2) merely gives priority to the actions described in (b)(2), but does nothing to limit them. As an example, the majority points to the use of "notwithstanding" in contracts to signify a clause "overriding" another clause. Here, however the "notwithstanding" language is very specific and identifies the particular provisions under which these exceptions could arise. Like *Gulf Coast Pros*, the majority has effectively decided the word "notwithstanding" should only be considered for the purposes of interpreting exemptions, but it should be ignored for the purposes of interpreting an "act of a party described by [section 27.010(b).]" § 27.005(b)(2). Needless to say, this selective reading of the statute does not conform with our statutory

---

[9] I do not necessarily disagree with the outcome of *Gulf Coast Pros.* Unlike the present case, the *Gulf Coast Pros* movants' social media posts sharing their experiences with a contractor are more likely communications of "consumer opinions" and "business reviews" under the Act.

13

construction precedent. *El Paso Educ. Initiative, Inc.*, 602 S.W.3d at 531–32 ("We read the statute to give effect to every word.").

The statutory framework simply does not support the majority's expansive interpretation of "communication" and "consumer opinions." Nor does the legislative intent, discussed below.

### *Context of Legislative Intent*

Finally, a literal interpretation of "communication" and "consumer opinions" is unsupported by the Legislature's intent. Looking at the legislative history, the Legislature, in enacting amendments to the TCPA in 2019, made it clear its intention was to narrow the number of claims subject to the Act. The bill analysis from the House Judiciary & Civil Jurisprudence Committee states the reason for the amendment was because of "unexpected applications" of the former TCPA due to its provisions being "overly broad or unclear." House Comm. on Judiciary & Civ. Juris., Bill Analysis, Tex. H.B. 2730, 86th Leg., R.S. (2019). During the reading of the bill in the 86th Legislative Session, remarks from Senator Hughes explained:

> Under current law, lawyers and judges can apply the definition to almost any type of human activity. The definition of public concern goes way beyond what the U.S. protects as speech about a public concern. . . . And this definition is partly why this statute has been litigated more than any other statute on our books. Under the bill, the issue must be something that matters to the public at large, such as statements about public figures and statements about political and social issues. . . . Statements in a public protest against government policy, for example, are covered by the definition. Statements made in private matters to a limited group of people would not be covered by the definition.

14

S.J. of Tex., 86th Leg., R.S. 2023–24 (2019). Chief among the reasons for the bill was the applicability of the former TCPA to "any type of human activity," which led to the "statute being litigated more than any other statute on our books." *Id.* It is clear from the legislative history the Legislature's intention was to narrow the amount of TCPA litigation by reducing its scope to matters which are truly of public concern while simultaneously curtailing its application to purely private matters.

To discern the Legislature's intent, we also look at the changes between the original statute and the amendments. Under the canon of reenactment, "a change in the language of a prior statute presumably connotes a change in meaning." SCALIA & GARNER at 260. The changes to the TCPA from its original form in 2011 to its amended form in 2019 are meaningful and should be understood as given new meaning. One of the more notable changes is in the definition of "matter of public concern." "Matter of public concern" was originally broadly defined to include "an issue related to:

    (A) health or safety;

    (B) environmental, economic, or community well-being;

    (C) the government;

    (D) a public official or public figure; or

    (E) a good, product, or service in the marketplace."

§ 27.001(7) (2011); Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64. The words "related to" made this definition broad and expansive, encompassing much more than litigation involving constitutional rights. The Legislature's 2019 amendment narrowed the definition to "a statement or activity regarding:

15

(A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;

(B) a matter of political, social, or other interest to the community; or

(C) a subject of concern to the public."

§ 27.001(7) (2019); Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684.[10]  Particularly salient to this discussion is the fact the Legislature quite deliberately deleted "an issue related to . . . a good, product, or service in the marketplace" from the definition of "matter of public concern."  From the change in the statute, we understand the Legislature intended to eliminate from the Act's scope issues merely related to goods and services.  The literal interpretation forwarded by both the majority and the Wheelers, wherein any "communication" by a "consumer" fits within the bounds of the TCPA, effectively creates a "backdoor" into the prior definition of "matter of public concern," with no regard for whether the communication is truly a matter of concern to the public.  Rather than narrow the claims subject to the Act, this literalism expands the realm of claims to its original form, effectively rendering the amendments meaningless.

Texas courts favor the "textually permissible interpretation that furthers rather than obstructs the document's purpose."  *In re Dallas County*, 697 S.W.3d 142, 159 (Tex. 2024) (quoting SCALIA & GARNER at 63) (alteration omitted).  When, as here, "the language

---

[10] *See also Walgreens v. McKenzie*, 713 S.W.3d 394, 400 (Tex. 2025) ("The current version narrows the required nexus between the action and the protected activity by deleting the broadest connective language—'relates to'—and authorizing a dismissal motion only when the action is 'based on or is in response to' the activity."); *Garza v. Perez*, No. 07-23-00271-CV, 2024 Tex. App. LEXIS 2804, at *6 n.8 (Tex. App.—Amarillo Apr. 23, 2024, pet. denied) (mem.op.) (discussing legislative history and purposes of amendment); *Vaughn-Riley v. Patterson*, No. 05-20-00236-CV, 2020 Tex. App. LEXIS 9371, at *6–8 (Tex. App.—Dallas Dec. 2, 2020, no pet.) (mem. op.) (discussing legislative arguments for TCPA amendment).

16

is susceptible of two constructions, one of which will carry out and the other defeat [its] manifest object, [the statute] should receive the former construction." *Hebner v. Reddy*, 498 S.W.3d 37, 41 (Tex. 2016) (citing *Citizens Bank of Bryan v. First State Bank*, 580 S.W.2d 344, 348 (Tex. 1979)).

The majority's interpretation "does not effectuate the TCPA's express purpose—it subverts that purpose," and it must be rejected. *Ferchichi v. Whataburger Rests. LLC*, 713 S.W.3d 330, 336–41 (Tex. 2025) (analyzing whether a motion for sanctions is a "legal action" under the TCPA and concluding other provisions of the TCPA, when taken in context, narrows the definition of "legal action" subject to the Act). The permissible construction cannot be one which literally subjects any communication by a consumer to the Act. Rather, the permissible interpretation is a narrower form of communications in the context of consumer opinions gathered for the public. To hold otherwise would be to re-expand the universe of claims subject to dismissal under the Act, which is clearly not what the Legislature intended.

I would hold the Wheelers' private criticisms of Martin's business are not "business reviews" or "consumer opinions" within the meaning of section 27.010(b)(2), and the alleged communications of the Wheelers were not "act[s] by a party described by [s]ection 27.010(b)." For the foregoing reasons, Martin's business disparagement claim was not subject to dismissal under the TCPA, and the trial court properly denied the Wheelers' motion to dismiss. §§ 27.003(a), 27.005(b). Accordingly, I would overrule the Wheelers sole issue.

17

## CONCLUSION

Because the majority decides anything "related to [consumer opinions and business reviews]" is subject to the Act, any kind of commercial tort will automatically fall under the auspices of the TCPA. It is very easy to see a revival of pre-2019 TCPA litigation involving mere breach of contract claims, commercial property disputes, employment claims, and intellectual property claims. Although the revised statute makes some exemptions for claims involving officers, employees, and independent contractors, third-party claims involving trade secret misappropriation, unfair competition, and, of course, business disparagement will also once again be litigated under the TCPA.

Because the Wheelers' statements Martin alleges are not acts under section 27.010(b), the trial court properly denied their motion under the TCPA. I would affirm the trial court's judgment.

Alex Yarbrough
Justice

18